UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RECEIVED
BY MAIL
OCT 04 2017
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

| | |
|---|---|
| Brad Stevens,<br>　　　　　Plaintiff,<br><br>vs.<br><br>Thomas Roy, Joan Fabian, Jeffery<br>Pederson, Bruce Reiser, Greg Smith,<br>Joseph Wieneke, Victoria Otte-Phillips,<br>Nancy Stacken, Steven Allen, Lori Korts,<br>Sarah Rodriquez, Michelle Wesson,<br>Mark Clark, Cal Ludeman, Lucinda Jesson,<br>Nancy Johnston, Stacy Sonnek ,Thomas<br>Lundquist, Elizabeth Barbo, Lauren<br>Herbert, Jennifer Jones and/or Jane<br>and John Does, in their individually<br>capacities,<br>　　　　　Defendants. | Court File No.:<br><br><br><br><br><br>COMPLAINT<br><br>17-cv- 4544  PAM\|FLN |

**INTRODUCTION**

1.     This is a complaint brought by Plaintiff Brad Ronald Stevens[1] against Defendants

in their personal capacity for violating constitutional, statutory and common law rights

while under dual commitment to the Minnesota Department of Corrections ("DOC") and

Department of Human Services ("DHS").   Specifically, Plaintiff alleges Minnesota

Statute §§ 609.3455, Subd. 8, and 253D.22 was unconstitutionally applied to him,

because the punishment was not *reasonably related to his offense* of attempted fourth

degree criminal sexual conduct pursuant to Minn. Stat.§ 609.17 subd. 1.  Mr. Stevens also

alleges violations of his constitutional, statutory and common law rights that include: (1)

false imprisonment; (2) deprivation of liberty; (3) right to refuse treatment and receive

---

[1] Herein also referred to as "Mr. Stevens"

1

SCANNED
OCT 0 5 2017
U.S. DISTRICT COURT ST. PAUL

services voluntarily; (4) recovery of wages; (5) deprivation of property; (6) involuntary servitude; (7) failure to train.

## NATURE OF THE ACTION

2.     Plaintiff in his complaint alleges violations of constitutional, statutory and common law rights.  Plaintiff states Minnesota Statute §§ 609.3455, Subd. 8 and 253D.22 was unconstitutionally applied to him, because the punishment was not *reasonably related to his offense* of attempted fourth degree criminal sexual conduct pursuant to Minn. Stat.§ 609.17 subd. 1., unduly restricting his liberty.  Specifically, Plaintiff alleges that the Defendants in their individual capacity, have among other things:

    a.  failed to apply the plain language of the terms of conditional release under Minn. Stat. § 609.3455, Subd. 8(a) as written, excluding attempts under Minn. Stat. § 609.17 subd. 1.

    b.  failed to apply constitutionally adequate procedures to transfer Plaintiff out of a hospital to a correctional facility under Minn. Stat. § 253D.22,[2] when the plain language of the imposed terms of conditional release under Minn. Stat. § 609.3455, Subd. 8, as written, excluded Minn. Stat. § 609.17., and amongst other things;

    c.  failed to require the discharge of committed individuals who are no longer dangerous and/or no longer in need of inpatient treatment for a sexual disorder;

---

[2] The legislature in 2013 recodified Minn. Stat. § 253B.18, Subd. 6 to Minn. Stat. § 253D.22 and made no substantial changes, thus Plaintiff will refer to current statute in this complaint.

d.  failed to require or provide independent periodic review or any regular internal reviews that include forensic risk assessments;

e.  failed to require the State to petition for a reduction in custody for committed individuals who meet the statutory requirements for such a reduction in custody;

f.  failed to provide for a judicial by-pass in the reduction in custody process;

g.  failed to provide a reduction in custody process that is constitutionally adequate;

h.  failing to notify the prosecutor and committing court of Plaintiff's terms of conditional release under Minn. Stat. § 609.3455, Subd. 8(b), as written, excluded Minn. Stat. § 609.17; violating Plaintiff's Fourteenth Amendment to the United States Constitution;

i.  falsely imprisoned Plaintiff for violating terms of release that not reasonably related to his offense of attempted fourth degree criminal sexual conduct;

j.  failed to apply clearly established rights to refuse treatment while civilly committed in violation of the Fourteenth Amendment to the United States Constitution;

k.  deprived Plaintiff of his wages/property for cost of confinement not related to any crimes committed in violation of the Fourteenth Amendment to the United States Constitution;

l.   forced Plaintiff into involuntary servitude as a punishment for crime not duly convicted in violation of the Thirteenth Amendment to the United States Constitution.

m.  failed to properly supervise and train the offending employee caused the constitutional violation at issue.

3.   Plaintiff seeks declaratory and equitable relief, as well as compensatory and punitive damages for these constitutional, statutory, and common law violations.

## JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction for Mr. Stevens' state law claims pursuant to 28 U.S.C. § 1367

5.   Venue in this Court is proper pursuant to 28 U.S.C. § 1391, because the acts and omissions giving rise to these claims occurred in the State of Minnesota and Defendants resides in the State of Minnesota.

## DECLARATORY AND INJUNCTIVE RELIEF

6.   This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201 as an actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration.

7.   The Act also provides the Court with authority to grant injunctive and other necessary and proper relief.  28 U.S.C. § 2202.

## PARTIES.

### I.    Plaintiff:

8.    Plaintiff Brad Stevens was confined at Minnesota Sex Offender Program in the City of St. Peter Minnesota, later transferred to the Minnesota Correctional Facility, Rush City located in Rush City, Minnesota, from November 17, 2006 to November 21, 2014. Plaintiff is currently civilly committed at the Minnesota Sex Offender Program located at 1111 Hwy 73, Moose Lake, Minnesota  55767.  He states he continues to suffer from these injuries and losses as a direct and proximate result of the acts and omissions of Defendants.

9.    Mr. Stevens is, and was at all times mentioned herein, has been restored of all his civil rights as an adult citizen of the United States and resident of the State of Minnesota.

### II.    Defendants:

10.    The Department of Corrections ("DOC") defendants' are personally responsible for knowing or should have known that their acts while employed that violated the constitutional, statutory, and common law rights of Plaintiff.

11.    The Department of Human Services ("DHS") defendants' are personally responsible for knowing or should have known that their individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while civilly committed as a sexually dangerous person.

   a.  Thomas Roy is the Commissioner and a member of the clinical team of the
       Minnesota of the Department of Corrections 1450 Energy Park Dr. Suite 200 St.

Paul, MN 55108. Defendant Roy is personally responsible for knowing or should have known that their individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Mr. Roy may be located at the Minnesota of the Department of Corrections 1450 Energy Park Dr. Suite 200 St. Paul, MN 55108.

b.  Defendant Joan Fabian was the Commissioner of the Minnesota of the Department of Corrections 1450 Energy Park Dr. Suite 200 St. Paul, MN 55108. Defendant Fabian is personally responsible for knowing or should have known her individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Ms. Fabian current address is unknown at this time, and her current address can be obtained by the Minnesota of the Department of Corrections 1450 Energy Park Dr. Suite 200 St. Paul, MN 55108.

c.  Defendant Jeffery Pederson is the Director of Hearing and Release Unit ("HRU") of the Department of Corrections. Defendant Pederson is personally responsible for knowing or should have known his individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Mr. Pederson may be located at the Hearing and Release Unit Officer of the Department of Corrections 1450 Energy Park Dr. Suite 200 St. Paul, MN 55108

d. Defendant Bruce Reiser was the Warden at Rush City Correctional Facility at Minnesota Department of Corrections. Defendant Reiser is personally responsible for knowing or should have known his individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Mr. Reiser may be located at MCF-Faribault  Department of Corrections 1101 Linden Lane Faribault,  MN 55021, or current address can be obtained by the Minnesota of the Department of Corrections 1450 Energy Park Dr. Suite 200 St. Paul, MN 55108. .

e. Defendant Greg Smith is the Associate Warden of Administration and supervises case managers at Rush City Correctional Facility for Minnesota Department of Corrections.  Defendant Smith is personally responsible for knowing or should have known his individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Mr. Smith may be located at  Department of Corrections 7600 525th Street Rush City, MN 55069

f. Defendant Joseph Wieneke is the Industry Director Minncor Ind., at Rush City Correctional Facility for Minnesota Department of Corrections. Defendant Wieneke is personally responsible for knowing or should have known that his individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while committed to the DOC for violation of attempted fourth degree criminal sexual conduct.

Mr. Wieneke may be located at  Department of Corrections 7600 525th Street Rush City, MN 55069

g. Defendant Victoria Otte-Phillips is the Offender Records and Sentencing Administrator of Rush City Correctional Facility for Minnesota Department of Corrections. Defendant Otte-Phillips is personally responsible for knowing or should have known her individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Ms. Otte-Phillips may be located at Department of Corrections 7600 525th Street Rush City, MN 55069

h. Defendant Steven Allen is the Director of Behavioral Health and a member of the clinical team of the Department of Corrections 1450 Energy Park Dr. Suite 200 St. Paul, MN 55108. Defendant Allen, is personally responsible for knowing or should have known his individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC

for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Mr. Allen may be located at the Department of Corrections 1450 Energy Park Dr. Suite 200 St. Paul, MN 55108.

i.  Defendant Lori Korts is a Case Manager Supervisor and a member of the clinical team at Rush City Correctional Facility for the Minnesota Department of Corrections.  Defendant Korts is personally responsible for knowing or should have known her individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Ms. Korts may be located at  Department of Corrections 7600 525th Street Rush City, MN 55069.

j.  Defendant Sarah Rodriquez is a Case Manager and a member of the progress review team at Rush City Correctional Facility for the Minnesota Department of Corrections.  Defendant Rodriquez is personally responsible for knowing or should have known her individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Ms. Rodriquez may be located at  Department of Corrections 7600 525th Street Rush City, MN 55069.

k. Defendant Michelle Wesson was a Case Manager and a member of the progress review team at Rush City Correctional Facility for the Minnesota Department of Corrections. Defendant Wesson is personally responsible for knowing or should have known her individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Ms. Wesson may be located at Department of Corrections 7600 525th Street Rush City, MN 55069.

l. Defendant Mark Clark is a Case Manager and a member of the progress review team at Rush City Correctional Facility for the Minnesota Department of Corrections. Defendant Clark is personally responsible for knowing or should have known his individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Mr.. Clark may be located at Department of Corrections 7600 525th Street Rush City, MN 55069.

m. Defendant Cal Ludeman was the Commissioner of Human Services and a member of the clinical team. Defendant Ludeman, is personally responsible for knowing or should have known his individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually

committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Mr. Ludeman may located at 3073 — 160th Street, Tracy, Minnesota 56175.

n. Defendant Ms. Lucinda Jesson was the Commissioner of DHS and a member of the clinical team.   Defendant Jesson, is personally responsible for knowing or should have known her individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Ms. Jesson may be located at the Minnesota Court of Appeals, 305 Minnesota Judicial Center, 25 Rev. Dr. Martin Luther King Jr.  Blvd., Saint Paul, Minnesota 55155.

o. Defendant Nancy Johnston was acting Clinical Director of MSOP and a member of the clinical team for the  Department of Human Services.  Defendant Johnston, is personally responsible for knowing or should have known her individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Ms. Johnston may be located at the Department of Human Services 444 Lafayette Road North St. Paul, MN 55155.

p. Defendant Stacy Sonnek was Social Service Director of MSOP and a member of the clinical team for the  Department of Human Services.  Defendant Sonnek, is

personally responsible for knowing or should have known her individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person. Ms. Sonnek  may be located at the Department of Human Services, MSOP 100 Freeman Drive. St. Peter, MN 56082

q.  Defendant Tom Lundquist was the Clinical Director of MSOP and a member of the clinical team for the Department of Human Services.  Defendant Lundquist, is personally responsible for knowing or should have known his individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person. Mr. Lundquist may be located at: 7359 Comfort Point Road, Britt, Minnesota 55710.

r.  Dr. Lauren Herbert is the Violent Risk Assessor Director of the MSOP.  Dr. Herbert, is personally responsible for knowing or should have known her individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Ms. Herbert may be located at Minnesota Sex Offender Program, Department of Health and Human Services, Human Services Building, 444 Lafayette Road, St. Paul, Minnesota 55155-3826

s.  Dr. Elizabeth Barbo is a Violent Risk Assessor of the MSOP.  Dr. Barbo, is personally responsible for knowing or should have known her individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Ms. Barbo may be located at the Department of Human Services, MSOP 100 Freeman Drive. St. Peter, MN 56082

t.  Dr. Jennifer Jones is the Violent Risk Assessor Director of the MSOP.  Dr. Jones , is personally responsible for knowing or should have known her individual acts while employed violated the constitutional, statutory, and common law rights of Plaintiff while dually committed to the DOC for violation of attempted fourth degree criminal sexual conduct, and the DHS as a sexually dangerous person.

Ms. Jones may be located at Minnesota Sex Offender Program, Department of Human Services, Human Services Building, 444 Lafayette Road, St. Paul, Minnesota 55155-3826., or her current Duluth Minnesota address may be obtained by the Department of Human Services at the St. Paul address.

12.    In all respects material to this action, all Defendants acted under the color of law and under the color of their authority as employees of the DOC and the DHS.

13.    In all respects material to this action, all Defendants personally acted under the authority of their employment with the DOC and DHS, as their conduct was objectively unreasonable, knowing or should have known clearly their acts were unlawful and should be held liable in their personal capacity.

14.    Plaintiff has exhausted his administrative remedies at the Minnesota Department of Corrections.

## ALLEGATIONS

15.    Plaintiff submits this action for adjudication on behalf of himself pursuant 42 U.S.C. § 1983, because every person who, under color of any statute…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

16.    Plaintiff alleges his constitutional, statutory and common law rights were violated while under a dual commitment to the DOC and the DHS from November 21, 2005 through November 21, 2014.

17.    Common questions of law and fact exist as to plaintiff.  Such questions of law and fact include, but are not limited to:

a.  Whether the DOC Defendants in their individual capacity unconstitutionally applied Minn. Stat. §§ 609.3455, Subd. 8 (b), to Plaintiff's terms of conditional release under Minn. Stat.§ 609.17 subd. 1.   Specifically, Plaintiff allege that Defendants, in their individual capacity, have, among other things:

   i.    imposing terms of conditional release for a violation of attempted fourth degree criminal sexual conduct under Minn. Stat.§ 609.17 subd. 1, an exclusion applied to Minn. Stat. §§ 609.3455, Subd. 8 (b);

   ii.   revoking conditional release liberties under Minn. Stat. §§ 609.3455, Subd. 8 (b); not reasonable related to his offense in violation of his constitutional and statutory right.

b.  Whether the DHS Defendants in their individual capacity unconstitutionally applied Minn. Stat. § 253D.22,  Transfer To Correctional Facility until expiration for violations of Plaintiff's attempted criminal sexual conduct under Minn. Stat.§ 609.17 subd. 1, an exclusion under Minn. Stat. §§ 609.3455, Subd. 8. Specifically, Plaintiff allege that Defendants, in their individual capacity, have, among other things:

   i.    failed to evaluate Plaintiff's sexual dangerousness to the public under Minn. Stat.§ 609.17 subd. 1, as attempted criminal sexual conduct is excluded under Minn. Stat. 253B.02, subd. 7a(b) [list 18 criminal offenses that may give rise to a statutory presumption of harmful sexual conduct in

the context of a sexually dangerous person proceeding], requiring MSOP inpatient treatment while on conditional release.

ii.   failed to modify a treatment plan to meet his needs, as Plaintiff refused to consent to treatment as he would never advance pass phase one of the program due to his conviction was obtained under an Alford plea, where he maintains his innocence;

iii.   failed to modify a treatment plan to exclude offenses found not credible by clear and convincing evidence by the SDP verdict, not requiring treatment plan or a need;

iv.   Notified Plaintiff of his right to refuse treatment and then use that information to impose a conditional release sanction until expiration for refusing treatment,

v.   assessed Plaintiff's dangerousness to the public upon the Stable 2007 actuarial risk tool in 2012, knowing this assessment has not been validated and disapproved on Plaintiff's population, resulting in continued restraints on liberties at a correctional facility;

vi.   failed to modify a treatment plan and assessments to exclude attempted criminal sexual conduct found required by the SDP Act, not requiring treatment or a need to reduce dangerousness to the public;

vii.   assessed Plaintiff's dangerousness to the public not knowing the constitutional criteria for continued commitment, resulting in extended confinement in a correctional facility;

c. Whether Defendants in their individual capacity unlawfully restrained/confined Plaintiff for disciplinary sanctions imposed upon terms of conditional release under Minn. Stat. §§609.3455, Subd. 8; as applied to violations under Minn. Stat.§ 609.17, for which Defendants;

    i. failed to contact the district court judge, or prosecutor to determine whether Plaintiffs conditions of release are in reasonable relation to his offense of attempted fourth degree criminal sexual conduct conviction, resulting in disciplinary punishment through November 21, 2014 ;

    ii. imposing terms of conditional release for a violation of attempted fourth degree criminal sexual conduct;

    iii. restrained Plaintiff's liberties through November 21, 2014 as applied to fourth degree criminal sexual conduct in violation of his due process protections under  Fourteenth Amendments to the United States Constitution.

d. Whether Defendants in their individual capacity required Plaintiff to pay for cost of confinement for fourth degree criminal sexual conduct, in which Plaintiff was not duly convicted in violated the Fourteenth Amendment to the United States Constitution, specifically:

    i. Deducted Plaintiff's prevailing minimum wage for cost of incarceration related to fourth degree criminal sexual conduct.

e. Whether Defendants in their individual capacity violated a patient's right to refuse treatment and receive services voluntarily under chapter 253D in violation of the Fourteenth Amendment to the United States Constitution in the following ways:

   i. Defendants' informed Plaintiff of his right to refuse treatment and then used such information provided to revoke probation.

f. Whether Defendants in their individual capacity forced Plaintiff into involuntary servitude as a punishment for crime not duly convicted in violation of the Thirteenth Amendment to the United States Constitution.

g. Whether Defendants in their individual capacity directly participated in constitutional violations as a result of a failure to train or supervise the subordinate who caused the violation.

18. Plaintiff has suffered losses as a direct result of Defendants actions and he is entitled to compensatory and punitive damages as well as mental anguish and emotional distress as a direct and proximate result of Defendants wrongful conduct as alleged herein. Absent relief, Plaintiff will continue to suffer from these losses, thereby allowing Defendants' violation of law to proceed without remedy.

## FACTS

**I.  Plaintiff's Criminal Procedural History.**

19. On November 27, 2002, Mr. Stevens, was charged in Goodhue County District Court by criminal complaint with the offenses of Count 1- Criminal Sexual Conduct in the Fourth degree-Use of Force, in violation Minn. Stat.§ 609.345, Subd. 1 (c); Count 2-

Attempted Criminal Sexual Conduct in the Fourth degree-Use of Force, in violation Minn. Stat.§ 609.17, Subd. 1, 4(2); §609.345, Subd. 1 (c), Count 3- Terroristic Threats, in violation Minn. Stat.§ 609.713 Subd. 1, and; Count 4- Criminal Sexual Conduct in the Fifth Degree, in violation Minn. Stat.§ 609.3451, Subd. 1,2.  (Count 1) to have engaged in forced or coerced sexual contact with the buttock or (Count 2) attempted forced or coerced sexual contact with the inner thigh of vagina of an adult female,  identified as R.A.M.W.

20.    On March 14, 2003 Plaintiff entered into a joint plea agreement with Goodhue County Attorney in the First Judicial District in Goodhue County District Court file Number 25-K6-02-002009.  Plaintiff proffered an Alford Basis guilty plea to Count II, *Attempted* Criminal Sexual Conduct in the Fourth degree in violation Minn. Stat.§ 609.17, Subd. 1, 4(2); §609.345, Subd. 1 (c).  Under an Alford Plea Plaintiff maintains his innocence.  As part of the plea agreement, the state agreed to an executed 36 months sentence.

21.    The court accepted the parties agreement and imposed an executed sentence of 36 months and then for a violation of (Minn. Stat.§ 609.345) Fourth Degree Criminal Sexual Conduct in the court imposed other probationary terms that included a ten year conditional release term under Minn. Stat. 609.109, Subd. 7.

22.    Minn. Stat. 609.109, Subd. 7(a) (2002) provides "Notwithstanding the statutory maximum sentence otherwise applicable to the offense or any provision of the sentencing guidelines, when a court sentences a person to prison for a violation of section 609.342, 609.343, 609.344, or 609.345, the court shall provide that after the person has completed

the sentence imposed, the commissioner of corrections shall place the person on conditional release. If the person was convicted for a violation of section 609.342, 609.343, 609.344, or 609.345, the person shall be placed on conditional release for five years, minus the time the person served on supervised release. If the person was convicted for a violation of one of those sections a second or subsequent time, the person shall be placed on conditional release for ten years, minus the time the person served on supervised release.

23.     In March or April of 2003 Goodhue County District Court sent a copy of the Courts Judgment Upon Violation/Sentencing Summary in Case file No. 25-K6-02-002009, ("Judgment"), to the DOC and was added to Stevens' DOC base file. On the face of the Judgment, it showed Brad Stevens was sentenced for attempted fourth degree criminals sexual conduct to an executed 36 month mandatory minimum sentence and a 10 year conditional release term was imposed.

## II.    Minnesota's History Authorizes Dual Commitments To The DOC And The DHS.

28.     Minnesota authorizes dual commitments for the purpose of protecting the public and providing treatment for the mentally ill and dangerous. Since both proceedings are in accordance with due process of law, one commitment does not disturb the other. *See State ex rel. Guren v. Grimes*, 245 Minn. 241, 71 N.W.2d 885 (1955); *Lausche v. Commissioner of Public Welfare*, 302 Minn. 65, 225 N.W.2d 366 (1974) *cert. denied*, 420 U.S. 993, 43 L. Ed. 2d 674, 95 S. Ct. 1430 (1975); *State v. Pietraszewski*, 283 N.W.2d 887 (Minn. 1979); *Fritz v. State*, 284 N.W.2d 377 (Minn. 1979); *Bailey v. Noot*,

324 N.W.2d 164 (Minn. 1982); *In re Martenies,* 350 N.W.2d 470, 472-73 (Minn. App. 1984), *pet. for rev. denied* (Minn. Sept. 12, 1984): *In re Blodgett,* 510 N.W.2d 910, 915 (Minn. 1994).

29.    On November 15, 2004 the Goodhue County Attorney requested a judicial hold be placed upon Mr. Stevens' mandated intensive supervised release ("ISR").  The Goodhue County District Court, Court File P9-04-1747, granted the requests on November 16, 2004, pending a petition for civil commitment as a Sexual Dangerous Person and/or Sexual Psychopathic Personality.

30.    On November 19, 2004 the DOC Hearing and Release Unit created and mandated Plaintiff to sign the mandatory conditions of release as applied to Fourth Degree Criminal Sexual Conduct Force Or Coercion 18 older female.

31.    The sentence imposed by the district court determines the maximum length of the supervised release period, the court does not set the terms or conditions on which the offender is released. The Commissioner, not the court, revokes supervised release if the offender violates any of the conditions of supervised release.

32.    On November 22, 2004 the DOC commissioner pursuant to Minn. Stat. § 244.05 Subd. 1, released Plaintiff from Minnesota Correctional Facility Moose Lake in the City of Moose Lake MN and relinquished custody of Mr. Stevens to the Goodhue County Sheriff and subsequent transfer to the Minnesota Sex Offender Program ("MSOP") at St. Peter MN, pending civil commitment proceedings.

33.    The Commissioner pursuant to Minn. Stat. § 244.05, Subd. 1, requires every inmate shall serve a supervised release term upon completion of the inmate's term of

imprisonment. During supervised release the inmate is and remains in the legal custody and under the control of the Minnesota Commissioner of Corrections, subject at any time to be returned to imprisonment and the parole rescinded by the Commissioner.

34.    The Commissioner also has authority under Minn. Stat. § 244.05 Subd. 2, to adopt by rule, standards and procedures for the revocation of supervised or conditional release, and shall specify the period of revocation for each violation of release. Procedures for the revocation of release shall provide due process of law for the inmate.

A.  Imposed Terms of Conditional Release Mandated Plaintiff To Follow Rules And Regulations Of Minn. Stat. 253B While Residing At The MSOP.

34.    Plaintiff's conditions of release included in part: condition #2 "Must successfully complete sex offender programming as directed by the clinical director of the Minnesota Sex Offender Program ("MSOP"); condition #3 Must abide by all rules and regulations of the facility whose authority and control the offender is under; and condition #5; If offender is released from the custody of the hold for civil commitment, or from civil commitment to the Minnesota Sex Offender Program prior to expiration of sentence, the Minnesota agent/designee will notify the Hearing and Release Unit prior to release. At that time, HRU will add appropriate conditions addressing Public Risk Monitoring surveillance and supervision.

35.    Upon Plaintiff's admission to the MSOP, they notified him of his rights under Minn. Stat. § 253B.03 Subd. 10, which included in relevant part;

a. rights applicable to Minn. Stat. § 253B.03, Subd. 10 (1) patient rights specified in this section and section 144.651.

    b.  rights applicable to Minn. Stat.§ 253B.03, Subd. 10 (2) the right to obtain

treatment and services voluntarily under this chapter.

    c.  rights under Minn. Stat.§ 253B.03, Subd. 7, [] the right to a modified

treatment plan to meet the patient's individual treatment needs.

## III.    The Civil Commitment Process In Minnesota.

36.   In order to be civilly committed to the MSOP, the person must be found to be a

SPP or SDP under Minn. Stat. § 253B.185.  The Plaintiff went through the following

civil commitment process.

37.   Pursuant to Minn. Stat. § 253B.185, Subd. 1(b) (2006), civil commitment

proceedings are initiated by the county attorney.  The county attorney must determine

whether good cause exists to file a petition within 120 days of receiving a court's

preliminary determination or a referral from the commissioner of corrections.

38.   On March 2, 2005 a contested civil commitment trial was held.

39.   During trial, the state compelled plaintiff to provide testimony upon accusations he

allegedly engaged in harmful sexual conduct and while maintaining his innocence

consistent with his Alford plea hearing, denied such accusations.

40.   As part of county trial, *forensic examiner* Drs. Rosemary Linderman and Linda

Marshall offered testimony that plaintiff met the criteria of a sexually dangerous person

and recommended treatment at the Minnesota's Sex Offender Program operated by DHS.

41.    Drs. Linderman and Marshall diagnosed plaintiff with Substance Abuse and a Personality Disorder Not Otherwise Specified with narcissistic and antisocial traits. The doctors did not diagnose that Plaintiff suffered from a sexual disorder or any paraphilia's.

42.    The two court experts concluding in their opinion; plaintiff's crime of attempted criminal sexual conduct was harmful sexual conduct and part of his course of conduct. "Drs. Linderman and Marshall opined that Stevens has engaged in a course of harmful sexual conduct.

43.    On April 25, 2005, the Goodhue County Probate Court issued an Initial Civil Commitment Order, finding plaintiff had met the criteria of a Sexually Dangerous Person under Minn. Stat. § 253B.02, Subd. 18c (a)(2004); A "sexually dangerous person" means a person who:(1) *has engaged in a course of harmful sexual conduct as defined in subdivision 7a*; (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and (3) as a result, is likely to engage in acts of harmful sexual conduct as defined in subdivision 7a. (b) For purposes of this provision, it is not necessary to prove that the person has an inability to control the person's sexual impulses.

44.    "Harmful sexual conduct," in the context of a sexually dangerous person proceeding, means sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another. Minn. Stat. 253B.02, subd.7a(a). There is a rebuttable presumption that first, second, third, and fourth degree criminal sexual conduct creates a substantial likelihood that a victim will suffer serious physical or emotional harm., 253B.02, subd.7a(b). *Id.*

45.    Minn. Stat. 253B.02, subd. 7a(b); list 18 criminal offenses that may give rise to a statutory presumption of harmful sexual conduct in the context of a sexually dangerous person proceeding. *Id.*

46.    Minn. Stat. 253B.02, subd. 7a(b) does not include attempts under Minn. Stat. 609.17 that gives rise to the rebuttable presumption. *Id.*

47.    The court initially committed plaintiff to the MSOP operated by the DHS pending a 60 day review hearing.

A.    Sex Offender Treatment Report Provided By The Minnesota Commitment and Treatment Act ("MCTA").

48.    Pursuant to Minn. Stat. § 253B.03, Subd. 7, once the court initially civilly commits a patient to the MSOP, Defendants are mandated to provide a program plan. Specifically, "A person receiving services under this chapter has the right to receive proper care and treatment, best adapted, according to contemporary professional standards, to rendering further supervision unnecessary. The treatment facility shall devise a written program plan for each person which describes in behavioral terms the case problems, the precise goals, including the expected period of time for treatment, and the specific measures to be employed. Each plan shall be reviewed at least quarterly to determine progress toward the goals, and to modify the program plan as necessary. The commissioner shall monitor the program plan and review process for regional centers to insure compliance with the provisions of this subdivision.

49.    Pursuant to Minn. Stat. § 253B.03, Subd. 7, once the court initially civilly commits a patient to the MSOP, Defendants are mandated to provide a program plan.

Specifically, "A person receiving services under this chapter has the right to receive proper care and treatment, best adapted, according to contemporary professional standards, to rendering further supervision unnecessary. The treatment facility shall devise a written program plan for each person which describes in behavioral terms the case problems, the precise goals, including the expected period of time for treatment, and the specific measures to be employed. Each plan shall be reviewed at least quarterly to determine progress toward the goals, and to modify the program plan as necessary. The commissioner shall monitor the program plan and review process for regional centers to insure compliance with the provisions of this subdivision.

50.    The commissioner of human services shall establish and maintain the Minnesota sex offender program. The program shall provide specialized sex offender assessment, diagnosis, care, treatment, supervision, and other services to civilly committed sex offenders as defined in section 246B.01, subdivision 1a. Services may include specialized programs at secure treatment facilities as defined in section 253 B.02, subdivision 18a, consultative services, aftercare services, community-based services and programs, transition services, or other services consistent with the mission of the Department of Human Services. Minn. Stat. § 246B.02

51.    Defendants Ludeman and Johnston did not provide a program plan assessment at the time petitioner was initially civilly committed to the MSOP to determine what phase of the program Mr. Stevens should be in, or whether the individual, in fact, should be committed to either the Moose Lake or St. Peter facilities, or whether Mr. Stevens could be treated in a less restrictive environment.

52.    On July 6, 2005 the civil commitment court held a 60 day review hearing to review MSOP Dr. Bruce Stewart report to the court.  Dr. Stewart gave testimony in relevant part, that offenses against victims MRH and HMT, which the commitment court did not find proven by clear and convincing evidence, stated Stevens would not be expected to admit those offenses as part of treatment because he was not prosecuted for those offenses.

53.    Dr. Stewart further stated as part of treatment, they have ways to discuss offenses without a patient incriminating himself.

54.    Dr. Stewart did not diagnose or allege Plaintiff suffered from a mental illness, sexual disorder or any paraphilia's.

55.    Dr. Bruce Stewart, concluding the risk factors presented by plaintiff presents a high risk for sexual re-offense, those factors include the number of  his sex-related convictions.

56.    On July 21, 2005 plaintiff was informed, during a meeting with Defendant Johnston, that he would have to admit to offenses in the record; that included charged and uncharged offenses in order to participate in treatment.

57.    After Johnston informed Plaintiff of the goals and expectation of treatment, he made an informed decision not to consent to treatment.

58.    On August 25, 2005, the Goodhue County Probate Court issued a Finding of Fact, Conclusions of Law and an Indeterminate Civil Commitment Order, civilly committing plaintiff to the MSOP, which finding included:

a.  "as part of treatment, they have ways to discuss offenses without a patient incriminating himself." *Finding of Fact \*11.*

b.  "alleged offenses against MRH and HMT, which the commitment court did not find proven by clear and convincing evidence, [] Stevens would not have to admit those offense as part of treatment because he was not prosecuted for those offenses." *Finding of Fact \*13.*

59.   The Probate Court Concluded in part:

a.  The 60 day treatment report filed with the Court as required by Minn. Stat. § 253B.18, subd. 2 (2004), and all of the procedural requirements for the review hearing required by the statute have been satisfied. *Conclusion of Law \*1.*

b.  MSOP is the appropriate and least restrictive alternative available to provide confinement, care, and treatment to Respondent. *Conclusion of Law \*3.*

60.   Trailing such SDP commitment order, on or about August 26, 2005, unnamed defendants informed Mr. Stevens of a court issued Indeterminate SDP Commitment and invited his participation in sex offender programming without modification or a plan to meet his treatment needs.

61.   Mr. Stevens was required to either sign a consent form, for which consenting to receive a treatment program according to its policies, or sign the portion of the form stating he refuses to participate in sex offender treatment.

62.    Plaintiff informed the unnamed defendants he is not refusing treatment and provided reasons for his nonparticipation in program planning; that it was due to the fears he could be subject to a charge of perjury and the plans for future involvement was unclear without modification to meet these needs.

63.    The MSOP treatment program is divided into three phases.  An average patient is expected to complete the program in a minimum of 24 months.

64.    MSOP did not present plaintiff, or did he sign a consent form until MSOP modified a treatment plan to meet his needs.

## IV.    History Of Conditional Release Terms As Applied.

65.    The legislature in 2005 recodified Minn. Stat. § 609.109, Subd. 7 to Minn. Stat. § 609.3455 and made no substantial changes affecting rights.

66.    Under Minnesota's State law pursuant to Minn. Stat. § 609.3455 Subd. 6., mandates when a court commits an offender to the custody of the commissioner of corrections for a violation of section 609.342, 609.343, 609.344, 609.345, or 609.3453, the court shall provide that after the offender has been released from prison, the commissioner shall place the offender on conditional release for ten years.

67.    Minn. Stat. § 609.3455 has provided that, in general, conditional release of sex offenders is governed by provisions relating to supervised release.  Minn. Stat. § 609.3455, Subd. 8(a) (2006).

68.    The statutory provisions of this subdivision relating to conditional release apply to all sex offenders sentenced to prison for a violation of section 609.342, 609.343, 609.344,

609.345, or 609.3453. Except as provided in this subdivision, conditional release of sex offenders is governed by provisions relating to supervised release. The commissioner of corrections may not dismiss an offender on conditional release from supervision until the offenders conditional release term expires. Minn. Stat. § 609.3455, Subd. 8(a).

69.     Before the offender is placed on conditional release, the commissioner shall notify the sentencing court and the prosecutor in the jurisdiction where the offender was sentenced of the terms of the offenders conditional release. Minn. Stat. § 609.3455, Subd. 8(b).

70.     The conditions of release may include successful completion of treatment and aftercare in a program approved by the commissioner, satisfaction of the release conditions specified in section 244.05, subdivision 6, and any other conditions the commissioner considers appropriate. Minn. Stat. § 609.3455, Subd. 8(b).

71.     If the offender fails to meet any condition of release, the commissioner may revoke the offenders conditional release and order that the offender serve all or a part of the remaining portion of the conditional release term in prison. An offender, while on supervised release, is not entitled to credit against the offenders conditional release term for time served in confinement for a violation of release. Minn. Stat. § 609.3455, Subd. 8(c).

72.     The commissioner is further mandated to develop a plan to pay the cost of treatment of a person released under Minn. Stat. § 609.3455, Subd. 8.(b). The plan may include co-payments from offenders, third-party payers, local agencies, or other funding

sources as they are identified. This section does not require the commissioner to accept or retain an offender in a treatment program.

73.    The Defendants and its agency's interpretation of these statutes are entitled to deference, absent a finding that it is in conflict with the express purpose and the intention of the legislature.

74.    The Department of Corrections historically has had concerns with court imposed conditional release sentences and routinely follows the mandate to sends letters notifying the prosecutor and the court of the terms of conditional release reasonable related to their offense and in some instances requesting modification of illegal sentences requiring corrections.

75.    The Department of Corrections is well aware of the conditional release flaws prior to imposing terms of conditional release terms, as there are literally hundreds of Minnesota Appellate Court cases establishing illegal conditional release sentences prior to the Department of Corrections setting the terms of release, as the DOC notifies the sentencing court of the offender sentence in; *State v. Humes*, 581 N.W.2d 317, 318 (Minn. 1998) (an administrator of Minnesota Correctional Facility-Stillwater sent the district court a letter inquiring whether it had intended to include a conditional release term in *Humes'* sentence in accordance with Minn. Stat. 609.346, subd. 5 (1996)); *State v. Schreiber*, 2014 Minn. App. Unpub. LEXIS 177 (In February 2013, an official for the Minnesota Department of Corrections (DOC) sent a letter to the district court stating that it had reviewed appellant's case and found that the district court had not specifically imposed a conditional-release period when it revoked appellant's probation.); *Kubrom v.*

*State,* 863 N.W.2d 88, 91 (Minn. App. 2015) (On April 29, 2013, the district court amended appellant's sentence a third time, adding the five-year conditional-release term after the DOC sent a letter to the sentencing court on April 24, 2013, informing it that appellant's sentence "did not mention the five year conditional release period" required by Minn. Stat. 169A.276, subd. 1(d) (2008)); *State  v. Smith*, 2014 Minn. App. Unpub. LEXIS 600 (In a letter dated August 9, 2012, the Department of Corrections (DOC) notified the district court that it had failed to include the mandatory five-year conditional release term as part of appellant's sentence. The court filed an amended warrant of commitment on August 27, 2012, to correct appellant's sentence by adding five years of conditional release); *State v. Bishop*, 2014 Minn. App. Unpub. LEXIS 578 (In a letter dated January 5, 2009, an employee of the Minnesota Department of Corrections (DOC) requested that the district court amend appellant's sentence to include the ten-year conditional-release term required under Minn. Stat. 609.3455, subd. 8); *State of Minnesota, ex rel., Randy James Newcomb, vs. Tom Roy, Commissioner of Corrections*, 2011 Minn. App. Unpub. LEXIS 591(On December 4, 2008, an employee of the Department of Corrections (DOC) wrote to the sentencing judge asking him to send a certified amendment to the sentence that included the conditional release term. The judge never responded to this letter and never amended the sentence.);  *The Commissioner imprisoned Newcomb anyway.*

A.    Plaintiff's Terms Of Conditional Release Were Imposed For Violation Of
       Section 609.17.

76.    On November 21, 2005 Mr. Stevens' 36 month executed sentence expired for

Attempted Criminal Sexual Conduct in the Fourth degree in violation Minn. Stat.§ 609.17, Subd. 1, 4(2); §609.345, Subd. 1 (c), and the commissioner continued Mr. Stevens terms of conditional release for 10 years for violation of section 609.345 applicable to 609.3455, subd. 8, without notice to the court or prosecutor of the illegal conditional release terms.

77.    The Department of Corrections Hearing and Release Unit imposed terms of conditional release until November 21, 2014 as applied to plaintiff's violation of section 609.17, attempted fourth degree criminal sexual conduct.

78.    In June of 2006, Plaintiff filed a Petition for Writ of Habeas Corpus applicable to Minn. Stat. § 253B.23 subd.5; challenging his ongoing civil commitment to the DHS custody.  During the habeas  proceeding, Defendants informed Plaintiff he *"is under an indefinite commitment at MSOP.  Stevens, like all patients, has the right to refuse treatment"* in *Stevens vs. Ludeman,* 2008 Minn. App. Unpub. LEXIS 764.

B.    Plaintiff Was Transferred To A Correctional Facility Until Expiration Pursuant To Minn. Stat. § 253D.22.

79.    If a person has been committed under this chapter and later is committed to the custody of the commissioner of corrections for any reason, including but not limited to, being sentenced for a crime or revocation of the person's supervised release or conditional release under section 244.05; 609.3455, sub-division 6, 7, or 8; Minnesota Statutes 2004, section 609.108, subdivision 6; or Minnesota Statutes 2004,section 609.109, subdivision 7, the person shall be transferred to a facility designated by the

commissioner of corrections without regard to the procedures provided in section 253D.29, subdivision 1. *Id. Minn. Stat. § 253D.22 subd (a)*.

80.    If a person is committed under this chapter after a commitment to the commissioner of corrections, the person shall first serve the sentence in a facility designated by the commissioner of corrections. After the person has served the sentence, the person shall be transferred to a treatment program designated by the commissioner of human services. *Id. Minn. Stat. § 253D.22 subd (b)*.

81.    In November 2006, an unknown defendant contacted the DOC Hearing and Release Unit to inform them Plaintiff was in violation of terms of conditional release; #2 "Must successfully complete sex offender programming as directed by the clinical director of the Minnesota Sex Offender Program ("MSOP"); and #3  Must abide by all rules and regulations of the facility whose authority and control the offender is under."

82.    On November 3, 2006 during a DOC disciplinary hearing, Officer Paula Thielan presided and heard evidence from MSOP Behavioral Analyst Ryan Chukuske, whom assisted in the prosecution by providing testimony; "that there have been five meeting where Offender Stevens refused to participate in treatment."

83.    Officer Thielan found; plaintiff was in violation of Hearing and Release Units imposed condition #2; based upon a preponderance of evidence, failure to complete sex offender programming as directed by MSOP designee.

84.    Officer Thielan further dismissed allegation #1; Must abide by all rules and regulations of the facility whose authority and control the offender is under.  Officer

Thielan found plaintiff has not incurred any rule violations; he is simply refusing to participate in programming.

85.     Officer Thielan supported her decision to revoke Plaintiffs conditional release finding, Plaintiff "has been at St. Peter for almost two years and has failed to take advantage of the opportunity to participate in treatment and remain at the security hospital."

86.     Officer Thielan based upon imposed terms of release made the decision to revoke probation and return plaintiff to the correctional facility until the expiration of sentence and direct that he participate in sex offender programming.

87.     Officer Thielan further ordered plaintiff's expiration in part, as he may be released from disciplinary confinement prior to expiration date if he is making progress in treatment and the MSOP Clinical Director finds that it would be more beneficial/productive for him to return.

88.     Officer  Thielan's imposed sanction of expiration of sentence and Plaintiff was transferred out of the MSOP.

C.  MSOP Authorized Transfer To A Correctional Facility Without Regard To The Special Review Procedures Required For Violation Of Minn. Stat. § 609.109, Subd. 7, pursuant to Minn. Stat. § 253D.22.

89.     Also on November 3, 2006 a Discharge Summary was filed by MSOP Social Service Director Stacy Sonnek MSW  LGSW., reasoning Plaintiff refusal to participate in sex offender treatment.

90.     The Discharge/Transfer included current Axis I diagnosis; Chemical Dependency sustained in full remission in controlled environment, Substance Abuse, Sexual Abuse of

an Adult and Axis II diagnosis; Personality disorder NOS with antisocial and narcissistic traits.

91.    Defendant's Ludeman, Johnston and Sonnek authorized a transfer out of the facility pursuant Minn. Stat. § 253D.22, without consideration from the Special Review Board to determine whether the transfer is appropriate following; (1) the persons clinical progress and present treatment needs; (2) the need for security to accomplish continuing treatment; (3) the need for continued institutionalization; (4) which facility can best meet the person's needs; and (5) whether transfer can be accomplished with a reasonable degree of safety for the public.

92.    Plaintiff's Discharge/Transfer  Summary was forwarded to the DOC, with instruction to return Mr. Stevens after he completes his sentence in November 2014.

93.    Defendant's Ludeman, Johnston and Sonnek authorized transfer out of the facility pursuant Minn. Stat. § 253D.22; without violating terms of conditions of release under Minn. Stat. § 609.3455 Subd. 8, subjecting Plaintiff to until expiration of sentence in November 2014.

   D.  The DOC Provides Residential Treatment And The Hearing And Release Unit Directed Participation In Sex Offender Treatment Programming.

94.    As part of the disciplinary sanction imposed by Officer Thielan, Mr. Stevens was directed to participate in sex offender treatment with a clause to be released from the disciplinary confinement if he is making progress in treatment and the MSOP Clinical Director finds that it would be more beneficial/ productive for him to return to the MSOP.

95.    Applicable to this directive, the Minnesota Legislature has mandated that the Department of Corrections provide for appropriate sex offender treatment programming. *See* Minn. Stat. § 241.67 (2006).

96.    Pursuant to Minn. Stat. § 241.01 Subd. 3a (a)., the Commissioner of Correction has the power and duty to accept persons committed to the commissioner by the courts for *care, custody, and rehabilitation.*

97.    Consistent with these responsibilities the Minnesota Sex Offender Program operated by the Department of Human Services was established at Moose Lake Correctional facility.    A program designed to treat offenders with mental disorders applicable to be subject to civil commitment under Minn. Stat. § 253B.

98.    MSOP is alleged to be a comprehensive treatment program which provides proper care and treatment, best adapted, according to contemporary professional standards, to rendering further supervision unnecessary under Minn. Stat. 253B.03 subd 7.

99.    While waiting to enter psychological treatment, Mr. Stevens was required to work.

    E.    Correctional Industries required Full Time Position And Prevailing Wages.

100.    Minnesota State law provides: "The commissioner may impose disciplinary sanctions upon any inmate who refuses to participate in vocational rehabilitative programs." This includes work assignment "programs with employment-related goals for inmates." Minn. Stat. § 244.03.

101.    While Mr. Stevens resided at MCF-RC, he was assigned to Minncor Industries from February 2007 through January 2011.    Mr. Stevens was assigned to the wood flooring division of Minncor.

102.   Minncor industries is certified under the Department of Justice's Prison Industry Enhancement Certification Program (PIECP) mandates that total deductions from a PIECP inmates wages not exceed 80 percent pursuant to 18 U.S.C.S. 1761(c). Regulating 80 percent cap on deductions includes federal, state, and local taxes; reasonable cost of room and board; and a minimum 5 percent and maximum 20 percent contribution to funds established for victims of crimes.   The law limits the deductions to only those listed, which does not include a deduction for court-ordered fines.

103.   The benefits of this program are numerous, with the reduction of the cost of incarceration being the most notable.   It is also an effective way of occupying the growing prison population and reducing idleness, while at the same time expanding the available supply of goods and services.   For the victims of crime, it is a means of partial reparation.   For the inmates, the program provides them with a marketable skill, offering a chance of rehabilitation, *as well as a way of meeting financial obligations while incarcerated.*   H. R. Rep. No. 101-681 (I), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6608-09 (1990).

104.   During Mr. Stevens work assignment, he was paid a prevailing minimum wage per hour and got yearly increases to reflect inflation.   His wages were subject to 80% deduction for a period and as he moved up the seniority scale, his wages were subject to 74% deduction, and eventually 64% to offset his cost of confinement pursuant to Minn. Stat. § 243.23.

105.    From February 2007 through January 2011, Mr. Stevens wages exceeded $10,000 a year subject to room and board cost of confinement and other tax deduction pursuant to Minn. Stat. § 243.23 subd. 3.

106.    Mr. Stevens' money paid into the cost of confinement is for the sole purpose to benefit him pursuant to Minn. Stat. § 243.24, subd. 1; Any money arising under section 243.23 remains under the control of the commissioner of corrections and for the sole benefit of the inmate, unless by special order of the commissioner of corrections it shall be used as designated in section 243.23, subdivisions 2 and 3, or for rendering assistance to the inmates family or dependent relatives, under such rules as to time, manner, and amount of disbursements as the commissioner of corrections may prescribe.    Unless ordered, disbursed as hereinbefore prescribed, or for an urgency determined in each case by the chief executive officer of the facility, a portion of such earnings in an amount to be determined by the commissioner shall be set aside and kept by the facility in the public welfare fund of the state for the benefit of the inmate and for the purpose of assisting the inmate when leaving the facility and if released on parole said sum to be disbursed to the inmate in such amounts and at such times as the commissioner of corrections may authorize and on final discharge, if any portion remains undisbursed, it shall be transmitted to the inmate.

107.    Due to the DOC policy, a "four year rule" in January of 2011, Mr. Stevens work assignment was laterally transferred to Plastech Corporation, a private corporation that signed a contract to lease space at the MCF-RC industry building pursuant to Minn. Stat. § 243.88.

108.    During Mr. Stevens work assignment with Platech, he was still subject to prevailing wages per hour and got yearly increases to reflect wage studies. His wages were subject to 64% deduction to offset his cost of confinement.

109.    Each and every compensation period minus the deductions for cost of confinement amounted to unlawful taking of wages through November 2014.

110.    Mr. Stevens, during 2011 and 2014, had an average wage earning of more than $12,000.00; subjected to deductions for room and board and taxes.

   F.   Waiting Lists For A Disciplinary Directives For Psychological Treatment.

111.    In April of 2007 Defendant Korts reviewed plaintiff's directives to participate in psychological treatment for mentally disordered sex offender and informing him he is on a waiting list to be admitted to the MSOP at the DOC site in Moose Lake Minnesota.

112.    According to a "Status History Report" generated for an *Annual Progress Review*, described sentence length 36 months for ATTEMPT CSC 4-FRC OR COERCN-ACQUAINT-18 OLDER-F.

113.    On April 8, 2008, MCF-Rush City's Psychological Services responded to Mr. Stevens' request to receive examination results of several Brief Jail Mental Health Screening Assessment (BJMHS) upon admission. Psych service staff reviewed the evaluations findings *no clinical significant psychological disorders* requiring mental health treatment while at Rush City.

114.    In April 2008, Mr. Stevens appeared before an annual review hearing. Defendant Korts informed plaintiff the HRU will not hold an annual review and he is still on a waiting list to be admitted to the MSOP at the DOC site in Moose Lake Minnesota.

115.   Mr. Stevens requested an answer to a question about where he was on the sex offender treatment list; as he was no longer subject to fears of perjury charges and requested his disciplinary directed treatment.   Defendant Korts responded since he was already civilly committed he was low priority for being admitted into MSOP-DOC site for sex offender programming.

116.   During this time Mr. Stevens risk to offend was not assessed by the MSOP to determine whether he still required treatment at the MSOP.

117.   Mr. Stevens during his incarceration period reviewed his base file twice.

118.   Mr. Stevens's base file includes the Goodhue County District Court Warrant of Commitment in File No.: 25-K6-02-002009.   The Warrant of Commitment showed a violation for attempted fourth degree criminal sexual conduct, a 36 month executed sentence and 10 year conditional release term.

119.   Mr. Stevens' base file also includes two Goodhue County Probate Court Orders in File No.: 25-P9-04-1747.   There is an April 25, 2005 Findings of Fact, Conclusion of Law and Order for Initial SDP Commitment; and the August 25, 2005 Findings of Fact, Conclusion of Law and Order for Indeterminate SDP Commitment; ordering treatment for diagnosed severe mental disorders at the MSOP.

120.   On April 27, 2010, Defendant Korts informed plaintiff to write the MSOP Clinical Director and request psychological treatment because of the waiting list.

   G.   MSOP psychological care and treatment was denied upon request.

121.   On January 10, 2011, Defendant Lundquist responded to Mr. Stevens' request for transfer back to the DHS for treatment.   Defendant applied "DOC policy 203.014 MSOP

offender on supervised release: D.#(b) The offender will remain in a DOC Facility for the entirety of the HRU assigned accountability time, except when the Director of MSOP determines that clinical or other unique factors in the case necessitate a transfer to a DHS facility."

122.   Defendant Lundquist informed: "Mr. Stevens at this time, I am unaware of any clinical or other unique factors in your case necessitating a transfer to a DHS Facility."

123.   Defendant Lundquist, in his individual capacity, actively participated in and while using his professional judgment supported longer punitive incarceration through DOC policy, rather than acting to assist in Mr. Stevens in his release from punitive confinement not reasonably related to civill commitment.

124.   Yet Defendant Lundquist, in his individual capacity, failed to take action upon requests knowing Mr. Stevens is civilly committed as a SDP.

125.   In April of 2011, Mr. Stevens, during his annual progress review, again notified Defendant Korts of his continued discipline violates his rights while under civil commitment.

126.   In May of 2011, Defendant Stacken met with Mr. Stevens to discuss his requests for mental health care as previously prescribed by his civil commitment court order and other MSOP doctors prescribing MSOP treatment for his serious mental health disorders and requested a transfer to the MSOP-DOC site for treatment.

127.   On June 3, 2011, Defendant Stacken informed Mr. Stevens that she would discuss his requests with Defendant Smith, Rieser, and Puffer, then get back with Mr. Stevens with her findings.

128.    Defendants Jesson, Lundquist, Korts, Stacken, Smith, and Reiser personally were each aware policy that Mr. Stevens Correctional Facility Base-File contains copies of the Goodhue County District Court SDP Commitment Order; finding Mr. Stevens was diagnosed with substance abuse and personality disorders requiring treatment at MCF-RC or MSOP DOC site.

129.    Defendants, in their individual capacity had the ability to place Mr. Stevens in a program at the DOC site of DHS, or to otherwise ensure he was able to seek the court-ordered treatment to render future supervision unnecessary through a reduction in custody under a provisional discharge or full discharge.

### H. Changes To DOC Disciplinary Directive Policy Since 2006.

130.    *Pursuant to Minn. Stat. § 243.05, subd 1 (a) (4):* "any new rule or policy or change of rule or policy adopted by the commissioner of corrections which has the effect of postponing eligibility for parole has prospective effect only and applies only with respect to persons committing offenses after the effective date of the new rule or policy or change."

131.    Prior to any responses to Mr. Stevens' 2011 requests for psychological treatment for his diagnosed mental disorder at the MSOP-DOC site, defendant Roy created and implemented DOC policy # 203.014 subd.3(b) stating: "release returnees who are already civilly committed as either SDP or SPP are not reviewed for or referred to the MSOP-DOC site."

132.  In November of 2011 Defendant Korts informed Mr. Stevens of a new policy change and because he was civilly committed, he is not eligible for sex offender treatment at the MSOP-DOC site.

133.  This policy change affected any possible early release eligibility from the discipline imposed and guaranteed Mr. Stevens' rehabilitation/ progress needs would not be met prior to expiration of sentence restraining future liberties for treatment and supervision at MSOP's secure treatment facility, rather than assuring rehabilitative program are available while incarcerated under Defendants care.

134.  On January 22, 2011, Defendant Allen responded on behalf of Tom Roy.  Stating: "Commissioner Roy has directed me to respond to your recent correspondence to him in which you raise concerns related to your eligibility for sex offender treatment and whether or not you require mental health treatment."

135.  Defendant Allen informed plaintiff because he was a *dually committed* offender currently in custody of the Commissioner of Corrections, he will be provided sex offender treatment upon return to the MSOP.

136.  Defendant Allen further informed plaintiff the MSOP will determine when he is eligible to return to that program and should he need mental health care to manage a mental illness during the remainder of your prison confinement, it will be provided to him.

137.  Defendant Allen stated please be aware that mental health care as I describe it here and sex offender treatment are very different services as Mr. Stevens was likely diagnosed with one or more mental health disorders following his evaluations prior to his

civil commitment.  Allen informed Mr. Stevens if he believes he has a mental health disorder such as depression that is interfering with his ability to function adequately in prison, please contact Psychology Director Nancy Stacken for further assessment.

138.   In April of 2012, Plaintiff during his annual review again notified Defendant Korts that his continued discipline violates his rights while under civil commitment at the DOC. Defendant Korts stated "she is getting the feeling [Mr. Stevens] is getting more heated during these annual review hearings and [Mr. Stevens] is like a pot simmering and could boil over at any time."

139.   Defendants Roy, Pederson, Kort, Reiser, Smith, Otte-Phillips, Stacken, Allen and Korts, in their individual capacity, were prohibited from applying any "new rule or policy or change of rule or policy adopted by the commissioner of corrections which has the effect of postponing eligibility for parole; such policy can only have prospective effect only and applies only to persons committing offenses after the effective date of the new rule or policy or change.

### V.    DHS Reduction in Custody Procedures

140.   Plaintiff applied for discharge from his civil commitment to the MSOP operated by the DHS applicable to 253B.185, subd 9.

141.   Pursuant to Minn. Stat. 253B.185, Subd. 18 (2012); The MCTA also provides that a patient indeterminately committed as a Sexually Dangerous Person may not be discharged unless: it appears to the satisfaction of the judicial appeal panel, after a hearing and recommendation by a majority of the special review board, that the patient is

capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision. In determining whether a discharge shall be recommended, the special review board and judicial appeal panel shall consider whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the patient in adjusting to the community. If the desired conditions do not exist, the discharge shall not be granted.

142. Defendant Korts was immediately contacted by MSOP's Dr. Jenifer Jones to request a release of information from Mr. Stevens to receive information on current treatment, assessments and disciplinary records. Plaintiff signed a release of information.

143. On May 15, 2012, Defendant Pederson responded to plaintiff on behalf of Defendant Roy, answering a request to review his placement at the MSOP, rather than outpatient treatment. Defendant Pederson stated "once the court had imposed a commitment order, the Department of Corrections was required to release you to that order on your supervised release date."

144. Defendant Pederson further stated "The Department of Corrections will not respond to any further correspondence regarding your civil commitment placement."

145. On May 22, 2012, Defendant Stacken informed plaintiff: since he was already civilly committed, sex offender programming will not be available at RC. And since I have no mental health treatment needs found by Mr. Allen, and I'd had not requested any services from her, she had nothing available for me.

146. On May 31, 2012, Drs. Elizabeth Barbo Psy.D and Jennifer Jones Ph.D. from the Department of Human Services-MSOP authored a mental health risk assessment.

147.    Drs. Barbo, Herbert and Jones, diagnosed Plaintiff with Pedophilia, Not Otherwise Specified, Alcohol Dependence, In a Controlled Environment, Cocaine Abuse, In controlled Environment and Personality Disorder Not Otherwise Specified with Anti-Social and Narcissistic Features, and recommended "Mr. Stevens to actively engage in sex offense specific treatment to work towards managing his dynamic risk factors and Mr. Stevens should begin to participate in treatment."

148.    Drs. Barbo Herbert and Jones, further assessed Plaintiff's dangerousness to the public based upon a Stable 2007 actuarial risk tool and found he was at a high risk to re-offender, despite the fact the tool has not been validated or found appropriate for inpatient population of sex offenders.

149.    Drs. Barbo Herbert and Jones, further assessed Plaintiff's dangerousness to the public based upon a history of  included harmful sexual conduct  applicable to Minn. Stat. 253B.02, subd. 7a(b) [list 18 criminal offenses that may give rise to a statutory presumption of harmful sexual conduct in the context of a sexually dangerous person proceeding] that excluded attempts under Minn. Stat. 609.17 that gives rise to dangerousness to the public.

150.    Drs. Barbo Herbert and Jones between 2012 and May of 2014 recommended to the SRB and the SCAP Mr. Stevens does not meet the criteria for full discharge, despite the fact Dr. Jones gave sworn depositions in *See Karsjens v. Jesson, File No. No. 11-3659; the  risk assessors had no training on* the correct legal standard when opining on whether an individual meets the criteria for transfer, provisional discharge or discharge. *Id.  See Jones Depo. 62:5-15; Jones Depo. 31:21-23; Jones Depo.31:21-24).*

151.    Dr. Jones stated she also did not receive any training from the MSOP regarding the Constitutional standards for commitment. *Id. Jones Depo. 62:5-15.*

152.    According to MSOP risk assessor Dr. Anne Pascucci, sworn testimony during the *Karsjents* trial, MSOP risk assessor did not receive training under the *Call v. Gomez* standard or was incorporated into the language of the MSOP's risk assessments until the risk until in June 2014.    *Id. See Karsjens v. Jesson, File No. No. 11-3659, Trial Transcript (hereinafter "Karsjens TT") at* 1709: ln.18-1710: ln. 13.)

153.    On August 2, 2012, at MCF-Rush City, Mr. Stevens appeared by Interactive Television before a Special Review Board to be fully discharged from his commitment. Defendant Korts was present as a member of Mr. Stevens treatment team, since he resided in the Department of Corrections.

154.    During the hearing, Dr. Jones recommending Plaintiff not be discharged as he poses a high risk to re-offend, thus not meeting the criteria for discharge.

155.    Further Dr. Jones stated that "Mr. Stevens is currently not participating in treatment" and for his diagnoses recommended he 'actively engage in sex offense specific treatment and actively engage in treatment to further develop pro-social attitudes and increase his ability to self-regulate when experiencing negative emotions.

156.    Plaintiff's Attorney Ryan Magnus informed Dr. Jones and parties that because of DOC policy, Mr. Stevens is not eligible for treatment while at the DOC because he is civilly committed.

157.    On August 19, 2012, the Special Review Board denied plaintiff request to be fully discharged.  Some of the finding included;

   a. Mr. Stevens is not participating in sex offender treatment and refused to participate in treatment at MSOP following his commitment. Due to his failure to participate in treatment at MSOP, his supervised release was revoked and he was returned to MCF-Rush City where he remains.

   b. The Special Review Board encourages Mr. Stevens to become involved in sex offender treatment upon his return to MSOP.

   c. Based upon the foregoing, Mr. Stevens is not eligible for a full discharge from his commitment as *Mentally Ill and Dangerous* in accordance with the factor under Minn. Stat. 253B.18, subd 15 because (a) he is not capable of making an acceptable adjustment to open society without supervision, (b) he continues to be dangerous to the public and (c) he continues to need inpatient treatment and supervision.

158. On November 28, 2012, Defendant Victoria Otte informed Mr. Stevens his conditional release term and expiration of sentence had been extended one day under the *Cote v. Roy, 2011 Minn. App. LEXIS 158 (unpublished)* decision. She Informed him "you can be returned to MSOP sooner if you complete treatment, or if the Clinical Director at MSOP feels it would be beneficial for you to return."

159. Defendants Roy, Pederson, Korts, Smith, Reiser and Victoira Otte, in their individual capacity, knew or should have known, plaintiff's 2006 disciplinary directives to participate in sex offender treatment could not be met at the DOC. Yet arbitrarily restrained Mr. Stevens' liberties at the DOC as a sexually dangerous person.

160.    On November 21, 2014 Mr. Stevens criminal sentence expired and he was involuntarily transferred back to the MSOP in Moose Lake Minnesota.

161.    Since Mr. Stevens' readmission to the MSOP, DOC Defendant Stacken is now the Associate Clinical Director respectively, of the MSOP and has diagnosed Mr. Stevens with severe mental disorders requiring involuntary civil commitment and treatment at the DHS hospital.

## VI.    Favorable Termination By An Authorized Tribunal Invalidated Conditional Release Terms As Applied To Attempt Violations.

162.    In 2016 Minnesota's Supreme Court declared Defendant's actions taken were invalid.    Minnesota's Supreme Court is a judicial body authorized to make such determination and favorably terminated Mr. Stevens conditional release sanction/sentence in *State v. Noggle,* 881 N.W. 2d 545 (Minn. July 6, 2016); holding "Minn. Stat. 609.3455, Subd. 6, does not authorize a 10-year conditional-release term for Noggle's violation of attempted third-degree criminal sexual conduct.    Therefore, the 10-year conditional-release term imposed by the district court was unauthorized by law and must be vacated."

163.    After filing this action in October of 2016, Plaintiff sought Post-Conviction Remedies in light of *State v. Noggle* on or about November of 2016; requesting the court to vacate the court record of an imposed conditional release term and vacate record of the Department of Corrections conditional release sanctioned; as such records may be used against Mr. Stevens in future proceedings.

164.   On December 22, 2016 in the First Judicial District, Goodhue County Court in *Stevens v. State*, File No. 25-K6-02-002009 (December 22, 2016). The Honorable Kevin F. Marks filed an order denying Post-Conviction relief finding: "Petitioner is not currently subject to a conditional release term because he has completed his criminals sentence. Therefore, even if the court were to find that *State v. Noggle* applies, there is no existing conditional release term for the court to vacate. Further finding Petitioner is not entitled to the relief he seeks because the Post-Conviction Court does not have legal authority to review and address the administrative decision of the Commissioner of Corrections."

## VII.   The Individual Involvement Of Defendants.

165.   Defendant Joan Fabian is personally responsible for imposing conditions of release under Minn. Stat. Minn. Stat. 609.3455, Subd. 8(a),

166.   Defendant Fabian was mandated to notify the sentencing court and the prosecutor in the jurisdiction where the offender was sentenced of the terms of the offenders conditional release under Minn. Stat. 609.3455, Subd. 8 (b) and responsible for imposing conditions of release and had final policy making authority for the DOC.

167.   As Commissioner of Corrections, Fabian also has authority to establish policies defining the duties and procedures of the Program Review Team ("PRT"), which allegedly imposed the five-year conditional release term on Steadman's sentence. *See* DOC Policy Directive 203.019 (stating that policy establishing PRT was passed pursuant to Minn. Stat. 241.01).

168.    Defendant Fabian also had the power to revoke an offender's conditional release upon failure to comply with the terms of that release.

169.    However, Fabian continued to engage in the unlawful policy, custom, or practice of subjecting Plaintiff to administratively imposed terms of conditional release though she knew or should have known the six listed enumerated offenses under Minn. Stat. 609.3455, Subd. 8, as plainly written excluded  Plaintiff's attempts violation under Minn. Stat. 609.17 to administratively imposed terms of conditional release applied to Plaintiff.

170.    Defendant Fabian is personal liable in the alleged violation of Mr. Stevens rights by failing to train, supervise, alter or interpret statutory laws that restrains liberties and rights to treatment.

171.    Defendant Fabian is personally responsible for restraining Mr. Stevens' liberties unlawfully upon setting conditional release terms that only apply to inmates sentences for a violation of section 609.345 for which plaintiff did not violate.

172.    Defendant Thomas Roy is personally responsible for imposing conditions of release under Minn. Stat. Minn. Stat. 609.3455, Subd. 8(a).,

173.    However, Roy continued to engage in the unlawful policy, custom, or practice of subjecting Plaintiff to administratively imposed terms of conditional release though he knew or should have known the six listed enumerated offenses under Minn. Stat. 609.3455, Subd. 8, as plainly written excluded  Plaintiff's attempts violation under Minn. Stat. 609.17 to administratively imposed terms of conditional release applied to Plaintiff.

174.    As Commissioner of Corrections, Roy also has authority to establish policies defining the duties and procedures of the Program Review Team ("PRT"), which allegedly imposed the five-year conditional release term on Steadman's sentence. See DOC Policy Directive 203.019 (stating that policy establishing PRT was passed pursuant to Minn. Stat. 241.01).

175.    Defendant Roy is also responsible his own failure to act, based on his statutory duty to administer the Department of Corrections and supervise the administration of all institutions, facilities and services under the Department's jurisdiction and his authority to change policies.  Defendant Roy implemented an unconstitutional policy of refusing to rehabilitate offenders.

176.    Defendant Roy personally participated in the alleged violation of Mr. Stevens rights by failing to train, supervise, alter or interpret statutory laws that restrains liberties and rights to treatment.

177.    Defendant Jeffery Pederson is the Executive Officer of the DOC's Hearing and Release Unit and is directly responsible for Mr. Stevens' development of special conditions of release applicable to Minn. Rules § 2940.2200; Minn. Stat. §§ 241.26; 243.05.  Defendant Pederson is also directly liable for setting Mr. Stevens conditional release terms applicable to Minn. Rules § 2940.2300; Minn. Stat. §§241.26; 243.05.  In addition, Defendant Pederson failed to notify the sentencing court and the prosecutor in the jurisdiction where Mr. Stevens was sentenced of the terms of his conditional release under Minn. Stat. § 609.3455, Subd. 8(a) and (b), did not apply to Plaintiff violation of Minn. Stat.§ 609.17, Subd. 1, 4(2); 609.345, Subd. 1 (c).  Defendant Pederson has the

power to revoke an offender's conditional release upon failure to comply with the terms of that release and is liable for any unlawful restraint upon liberties.

178.    Because Defendant Jeffery Pederson is the Executive Officer of Hearing and Release unit, the Commissioner of Corrections has been delegated to authorize granting parole and work release, for revoking parole and supervised releases Minn. Rules 2940.0100 subp. 8; Minn. Stat. §§ 241.26: 243.05.

179.    However, Pederson continued to engage in the unlawful policy, custom, or practice of subjecting Plaintiff to administratively imposed terms of conditional release though he knew or should have known the six listed enumerated offenses under Minn. Stat. 609.3455, Subd. 8, as plainly written excluded  Plaintiff's attempts violation under Minn. Stat. 609.17 to administratively imposed terms of conditional release applied to Plaintiff.

180.    Defendant Jeffery Pederson is personally responsible for restraining Mr. Stevens' liberties unlawfully for conditional release terms that only apply to inmates sentences for a violation of Minn. Stat. § 609.345.

181.    Defendant Bruce Reiser MCF-RC was the Warden and was responsible in either his direct action, or his failure to properly supervise and train the offending employees caused the constitutional violation at issue.  Defendant Reiser is responsible and involved in day-to-day operations, his personal involvement may be found if he is involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions.

182.    Defendant Greg Smith is MCF-RC Associate Warden of Administration and is responsible for case management.  Defendant Smith in either his direct action, or his

failure to properly supervise and train the offending employee caused the constitutional violation at issue. Defendant Smith is responsible for his involvement in day-to-day operations, his personal involvement may be found if he is involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions.

183. Defendant Joseph Wieneke is an Industry Director for Minncor Industries, Inc., at MCF-RC and is responsible for work assignments and wage deductions under Minn. Stat. § 243.24, as well as industry certification the Department of Justice's Prison Industry Enhancement Certification Program (PIECP) mandates pursuant to 18 U.S.C.S. § 1761(c).

184. Defendant Wieneke is further responsible for prevailing minimum wage regulations and deductions which include federal, state, and local taxes; reasonable cost of room and board; and a minimum 5 percent and maximum 20 percent contribution to funds established for victims of crimes. The law limits the deductions to only those listed, which does not include a deduction for court-ordered fines. As well as meeting financial obligations while incarcerated. Defendant Wieneke in either his direct action, or responsibility for his involvement in day-to-day industry operations is liable for creating, applying, or interpreting a policy that gives rise to unconstitutional servitude and wage deductions.

185. Defendant Victoria Otte-Phillips is an Offender Sentencing and Records Supervisor. Part of Defendant Otte-Phillips job responsibilities is to ensure the legality of each sentence she reviews. Current policy, custom, or practice of records office staff is to

determine that an offender received a legal sentence for the offense. DOC procedures require staff to draft and distribute a letter to the court, district attorney, and offender, advising them of the DOC's statutory responsibility regarding the modification of any sentence. *If no response to that letter is received, DOC staff has the authority to correct the sentence themselves.*

186.    Defendant Nancy Stacken, was the Psychological Service Director (Psychologist Supervisor) at MCF-RC. Defendant Stacken holds a Master's Degree in Psychology. Ms. Stacken is bound, not only by Minnesota Statutes and Rules, but also by her Professional Ethics as a Psychologist. Defendant Stacken is also a mandatory reporter of abuse if she witnesses the same. Defendant Stacken failed to report and/or protest policies that denied treatment for substance abuse and personality disorders that violated Mr. Stevens' rights as a civilly committed person, yet allowed these rights to be violated. Defendant Stacken's actions involve reckless or callous indifference to Mr. Stevens' rights over what is lawful and knew right from wrong and such actions resulted in mental anguish and emotional suffering due to the constitutional deprivations.

187.    Defendant Nancy Stacken is responsible for her own failure to act, or change the challenged policies. Director Stacken authorized and condoned unconstitutional policies.

188.    Defendant Steven Allen is the DOC Behavioral Health Director, is responsible for his own failure to act, based on his statutory duty to administer the Department of Corrections and supervise the administration of all institutions, facilities and services under the Department's jurisdiction and his authority to change the challenged policies.

Director Allen authorized and condoned an unconstitutional policy of refusing sex offender treatment to civilly committed sex offenders.

189.   Defendant Lori Korts, was Mr. Stevens' assigned institution caseworker responsible for coordinating the development of needs assessment, program plans, progress reviews for those inmates assigned to their caseload applicable Minn. Rules § 2940.0100 subp. 14.   Defendant Korts was also part of Mr. Stevens annual progress reviews and chairperson.   Progress reviews were held at least annually; in conjunction with custody status changes and as individual program needs requirements.   Inmate progress reviews may result in the modification of the inmates needs assessment, modifications of program plan recommendations for institutional transfer, work release recommendations, and the development of conditions of parole or supervise release. Copies of these reports are forwarded to the Hearing and Release Unit for informational purposes as required under applicable Minn. Rules § 2940.0900.

190.   Defendant Korts in either her direct action, or responsibility for her involvement in yearly reviews, her personal involvement may be found if she is involved in creating, applying, or interpreting conditional release terms/policy that gives rise to unconstitutional action.

191.   Defendant Sarah Rodriquez, was also part of Mr. Stevens annual progress reviews and chairperson.   Progress reviews were held at least annually in conjunction with custody status changes and as individual program needs requirements.   Inmate progress reviews may result in the modification of the inmates needs assessment, modifications of

program plan recommendations for institutional transfer, work release recommendations, and the development of conditions of parole or supervise release. Copies of these reports are forwarded to the Hearing and Release Unit for informational purposes as required under applicable Minn. Rules § 2940.0900.

192.   Defendant Rodriquez in either her direct action, or responsibility for her involvement in yearly reviews, her personal involvement may be found if she is involved in creating, applying, or interpreting conditional release terms/policy that gives rise to unconstitutional actions.

193.   Defendant Michelle Wesson, was also part of Mr. Stevens annual progress reviews and chairperson.   Progress reviews were held at least annually in conjunction with custody status changes and as individual program needs requirements.   Inmates progress reviews may result in the modification of the inmates needs assessment, modifications of program plan recommendations for institutional transfer, work release recommendations, and the development of conditions of parole or supervise release.  Copies of these report are forwarded to the Hearing and Release Unit for informational purposes as required under applicable Minn. Rules § 2940.0900.

194.   Defendant Wesson in either her direct action, or responsibility for her involvement in yearly reviews, her personal involvement may be found if she is involved in creating, applying, or interpreting a conditional release terms/policy that gives rise to unconstitutional actions.

195.    Defendant Mark Clark was also part of Mr. Stevens annual progress reviews and chairperson.  Progress reviews were held at least annually in conjunction with custody status changes and as individual program needs requirements.  Inmate progress reviews may result in the modification of the inmates needs assessment, modifications of program plan recommendations for institutional transfer, work release recommendations, and the development of conditions of parole or supervise release.  Copies of these report are forwarded to the Hearing and Release Unit for informational purposes as required under applicable Minn. Rules § 2940.0900.

196.    Defendant Clark in either his direct action, or responsibility for his involvement in yearly reviews, his personal involvement may be found if he is involved in creating, applying, or interpreting a conditional release terms/policy that gives rise to unconstitutional actions.

197.    Defendant Cal Ludeman, as Commissioner of DHS, was responsible for and was personally involved in drafting, editing, overseeing, implementing, and enforcing official MSOP policies and procedures.  Minn. R. 9515.3070 subp.1 A(3) requires the staff to be knowledgeable about the rights of persons in treatment under applicable laws, such as Minnesota Statutes, sections 144.65; program polices ensuring these rights. Defendant Ludeman was aware of *Stevens v. Ludeman*, informing Plaintiff he had the right to refuse treatment while civilly committed.

198.    Defendant Cal Ludeman was responsible for authorizing a transfer without violating state law or being brought before the Special Review Board.

199.   Defendant Lucinda Jesson, was responsible for and personally involved in drafting, editing, overseeing, implementing, and enforcing official MSOP policies and procedures.  Defendant Jesson's statutory duty to adopt rules to govern the operation of the MSOP, Minn. Stat. § 246B.04.  Defendant Jesson was responsible for authorizing and enforcing DOC policy that refuses a civilly committed sex offender from receiving sex offender treatment while in the DOC.

200.   Defendant Nancy Johnston, MSSW is MSOP's Executive director and may be responsible for her own failure to act, based on her statutory duty to administer the MSOP and supervise the administration, facilities and services under the Department's jurisdiction' and her authority to change and challenge policies.  Minn. R. 9515.3070 subp.1 A(3) requires MS. Johnston to be knowledgeable about the rights of persons in treatment under applicable laws, such as Minnesota Statutes, sections 144.65; and program polices ensuring these rights. Defendant Johnston is aware of *Stevens v. Ludeman*, informing Mr. Stevens he had the right to refuse treatment while civilly committed, yet authorized a transfer without violating state law or being brought before the Special Review Board.

201.   Defendant Stacy Sonnek, LSW LICSW, is MSOP's Social Service Director and may be responsible for her own failure to act, based on her statutory duty to administer the MSOP and supervise the administration, facilities and services under the Department's jurisdiction' and her authority to change and challenge policies.  Minn. R. 9515.3070 subp.1 A(3) requires Ms. Sonnek to be knowledgeable about the rights of

60

persons in treatment under applicable laws, such as Minnesota Statutes, sections 144.65;

program polices ensuring these rights. Defendant Sonnek is aware of Plaintiff had the

right to refuse treatment while civilly committed, yet authorized a transfer without

violating state law or being brought before the Special Review Board.

## CAUSE OF ACTION

202.    At all times relevant in the complaint, all named Defendants were/are employees

of the DOC and/or DHS and have violated Plaintiff's civil rights pursuant to 42 U.S.C. §

1983 which alleges violations of the Fourteenth Amendment to the United States

Constitution, and other state statutes.

203.    At all times pursuant to this complaint, Defendants, in their individual capacity,

knew or should have known the rights of Mr. Stevens and did nothing to change or stop

the complained of policies, customs, or practices to prevent this conduct from occurring

and continued to actively participate in such conduct.

### Count I.
### Terms Of Conditional Release under Minnesota Statute § 609.3455 subd. 8 Was Unconstitutionally Applied To Attempted Criminal Sexual Conduct.

204.    Plaintiff incorporate all previous allegations as if fully set forth herein.

205.    A statute that violates constitutional rights when enforced is unconstitutional as

applied to those whose rights are violated.

206.    Defendants violated Plaintiff's constitutional rights through their enforcement of

Minnesota Statute § 609.3455 subd. 8(b), which authorizes the commissioner to impose

conditions of release relating to conditional release apply to all sex offenders sentenced to

prison for a violation of Minn. Stat. §§ 609.342, 609.343, 609.344, 609.345, or 609.3453, which excluded Mr. Stevens' violations Minn. Stat. §§ 609.17.

207. The nature and duration of the terms of conditional release and sanction of Plaintiff under Minn. Stat. 609.3455 subd. 8(b), as applied was not are *reasonably related to the offense* and unduly restricted the [parolee's] liberty.

208. Defendants Fabian and Pederson in their individual capacity knew or should have known the plain meaning Minn. Stat. § 609.3455, Subd. 8 (b) authorizes terms of conditions release to all sex offenders sentenced to prison for a violation of Minn. Stat. §§ 609.342, 609.343, 609.344, 609.345, or 609.3453, which excluded Mr. Stevens' violations Minn. Stat. § 609.17.

209. Defendants imprisoned Plaintiff on November 3, 2006 and continued the confinement yearly up to November 21, 2014 for violating terms of conditional release as applied to Minn. Stat. § 609.17, not authorized under Minn. Stat. § 609.3455, Subd. 8.

210. Defendants, specifically enforcing Minn. Stat. § 609.3455, Subd. 8(b), as applied to Plaintiff's attempt conviction set forth above, has been declared invalid by Minnesota's Judicial Branch of Government, an authorized tribunal favorably terminated Plaintiff's term of conditional release by Minnesota's Supreme Court decision of *State v. Noggle,* 881 N.W.2d 545 (Minn. July 6, 2016); Holding: Minn. Stat. § 609.3455, Subd. 6, does not authorize a 10-year conditional-release term for Noggle's violation of attempted third-degree criminal sexual conduct.

211. Defendants Pederson in his individual capacity as the Hearing and Release Director knew or should have known the DOC's interpretation of Minn. Stat. § 609.3455,

Subd. 8., which plain written language excluded Plaintiff's terms of conditional release as applied to violations of attempts.

212. Defendants Roy and Fabian, given the statutory powers and duties granted to the Commissioner of Corrections, including those related to the administration of the PRT, Defendants Roy and Fabian, Reiser, Smith, Otte-Phillips, Korts, Rodriquez, Wesson and Clark in their individual capacity held PRT hearing and failed to alter the DOC's interpretation of Minn. Stat. § 609.3455, Subd. 8., which plain written language excluded violations of attempts.

213. Yet each Defendant knew or should have known that the DOC's practice of administratively imposing terms of conditional release as applied to an attempt conviction was unlawful and failed to act on changing these type of policies, customs and practices from being enforced, or to prevent this conduct from occurring and actively continued to participate in such conduct through 2014.

214. Defendants' implementation of Minn. Stat. § 609.3455, Subd. 8(b), violated Plaintiff's constitutional rights to liberty. As the application of Minn. Stat § 609.3455, Subd. 8(b) upon Plaintiff was not reasonable related to his offense that unduly restricted his liberties, rendering Defendants actions unconstitutional.

215. The acts and omissions of Defendants render Minn. Stat § 609.3455, Subd. 8(b) unconstitutional as applied.

216. Plaintiff Stevens has been subject to and injured by these alleged violations as a direct and proximate result of Defendants' acts and omissions as specifically set forth

above.   Unless relief is granted, Plaintiff will continue to be injured as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

### Count II.

**Minnesota Statute § 253D Was Unconstitutionally Applied To Terms Of Conditional Release While Civilly Committed As A SDP.**

217.   Plaintiff incorporate all previous allegations as if fully set forth herein.

218.   A statute that violates constitutional rights when enforced is unconstitutional as applied to those whose rights are violated.

219.   Defendants Ludemand, Johnston and Sonnek violated Plaintiff's constitutional rights through their enforcement of Minn. Stat. § 253D, under which Plaintiff's terms of conditional release mandated he successfully complete sex offender programming as directed by the clinical director of the Minnesota Sex Offender Program ("MSOP").

220.   The nature and duration of the civil commitment of Plaintiff under Minn. Stat. 253D as applied was not reasonably related or narrowly tailored to the purpose for commitment.

221.   Defendants Ludemand, Johnston and Sonnek prior to 2007 neither provide nor directed others to provide periodic independent review of Plaintiff.   Without such reviews, he remained civilly committed after such a time that he no longer meet the criteria for commitment or after such a time that he satisfy the statutory requirements for reduction in custody.

222.   Defendants did not petition for Plaintiff's discharge who was no longer dangerous and/or no longer in need of inpatient treatment for a sexual disorder. Without such a

requirement, Plaintiff remained civilly committed after said time as he was longer dangerous and/or no longer in need of inpatient treatment for a sexual disorder and was found in violation of release conditions for not successfully completing treatment.

223.    Defendants Ludemand, Johnston and Sonnek did not provide an assessment at the time Plaintiff was first civilly committed to MSOP to determine what phase of the treatment program he should be placed in or whether the individual, in fact, should be committed to either the Moose Lake or St. Peter facilities, or whether they could be treated in a less restrictive environment.

224.    Defendants did not provide a less restrictive alternative to confinement at a MSOP secure facility.  Plaintiff did not have same level of security needs, however, the MSOP as implemented did not account for this possibility.  Also, Plaintiff no longer meet the statutory requirements for civil commitment, there was no less restrictive facility or program for him to enter as he did not have a sexual disorder requiring inpatient treatment, regardless of his none participation.

225.    Defendants in 2006 were aware of Plaintiff did not have sexual disorder or mentally ill requiring medical treatment and could be released to a less restrictive environment.

226.    Defendants in 2006 were aware of Plaintiff had entered Alford Plea convictions where he maintained his innocence, did not admit guilt and yet Defendants failed to modify his treatment to meet this needs, as he could not progress pass phase one of the program or be released to a less restrictive environment.

227.   Defendants did not provide Plaintiff with constitutionally adequate treatment or with treatment, best adapted according to contemporary professional standards, to render further supervision unnecessary.

228.   Defendants implemented policies and conditions of confinement that are punitive in nature, and therefore not reasonably related to the purpose of confinement.

229.   Defendant Lundquist specifically, implemented and enforced DOC policies and failed to act upon reducing Mr. Stevens extended confinement at a correctional facility that was punitive in nature, and therefore not reasonably related to the purpose of his civil commitment.

230.   Defendants did not implement a process for reduction in custody that provides Plaintiff with the required constitutional due process protections.

231.   Defendants in light of the policies imposed assisted the in Plaintiff's conditional release violation by providing evidence Plaintiff is violation of his terms of conditional release.

232.   Yet Defendants Director Johnston and Sonnek failed to act knowing Plaintiff's knowing he did not have a sexual disorder requiring sex offender treatment or could successfully complete as required by the his terms of conditional release that resulted in Plaintiff being returned to prison until November 21, 2014.

233.   Defendants Herbert, Barbo and Jones in 2012 while Plaintiff had petitioned for a reduction in custody, Defendants applied risk assessment that included actuarial risk tools of the Stable 2007, found not appropriate or valid to Plaintiff, applied sexual abusive

behavior found not credible by clear and convincing evidence excluded by the SDP verdict.

234.    Defendants Herbert, Barbo and Jones further assessed and used Plaintiff's 2006 conditional release violations as a risk factor to elevate his dangerousness to the public not meeting the criteria for discharge.

235.    Defendants Herbert, Barbo and Jones risk assessments included Plaintiff's 2003 conviction for attempted fourth degree criminal sexual under Minn. Stat. § 609.17, which is not one of the 18 enumerated offenses defined in the SDP Act under Minn. Stat. 253B.02, subd. 7a(b) (listing 18 criminal offenses that may give rise to the statutory presumption of harmful sexual conduct), nor does any plain language appear in subdivision 7a(b) that includes an attempt.

236.    Yet Defendants Herbert, Barbo and Jones knew or should have known their recommendation to the Special Review Board to deny Plaintiff's discharge was not lawful.

237.    Ultimately no individual has ever been successfully completed MSOP or fully discharged from civil commitment under Minn. Stat. §253D.

238.    The failure to release any patient for successfully completing treatment over the life of the MSOP program or demonstrates that Minn. Stat. §253D, and the treatment program was unconstitutionally applied to Plaintiff's terms of conditional release while under dual commitment.

239.    Defendants' Herbert, Barbo and Jones implementation of Minn. Stat. § 253D violated Plaintiff's constitutional rights liberty. Additionally, the application of Minn.

Stat § 253D to Plaintiff was punitive, not therapeutic, in nature, rendering it unconstitutional.

240.    The acts and omissions of Defendants Ludeman, Jesson, Johnston, Lundquist, Sonnek, Herbert, Barbo and Jones renders Minn. Stat. § 253D unconstitutional as applied to his dual commitment.

241.    Plaintiff Stevens have been subject to and injured by these alleged violations as a direct and proximate result of Defendants' acts and omissions as specifically set forth above. Unless relief is granted, Plaintiff Stevens  injures will continue as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

**COUNT III.**
**False Imprisonment—State Law Claim**

242.    Mr. Stevens incorporates all previous allegations as fully set forth herein.

243.    Minnesota law authorizes tortious actions for false imprisonment resulting in personal injury pursuant to Minn. Stat. § 541.07 subd. 1.

244.    Based on the unlawful policy, custom, or practice created and implemented by Defendants, Plaintiff's sentence imposed by the district court determined the maximum length of the supervised release period, as the court does not set the terms or conditions on which the offender is released for which Defendants, not the court, revokes supervised release if the offender violates any of the conditions of supervised release.

245.    Based on the policy and procedures created and implemented by Defendants Pederson, Hearing and Release Director imposed terms of conditional release for  Mr. Stevens.

246.    Based on the unlawful policy, custom, or practice created and implemented by Defendants, Plaintiff's conditions of release was created and implemented for violations of Minn. Stat. § 609.345–fourth degree criminal sexual conduct.

247.    Based on the unlawful policy, custom, or practice created and implemented by Defendants Fabian and Pederson, failed to notify the prosecutor and the sentencing court Plaintiff's attempt offense was excluded under Minn. Stat. § 609.3455, Subd. 8 (b).

248.    Based on the unlawful policy, custom, or practice created and implemented by Defendants Fabian and Pederson, Plaintiff's terms of conditional release was revoked and Mr. Stevens was imprisoned for violations of 609.345–fourth degree criminal sexual conduct.

249.    Based on the unlawful policy, custom, or practice created and implemented by Defendants Roy, Rieser, Smith, Korts, Rodriquiz, Wesson, Clark and Pederson, continued the false imprisonment of Mr. Stevens after every annual progress review upon his violation Minn. Stat. § 609.17, as applied to 609.345 Subd. 8., through November 2014.

250.    Defendants in their individual capacity, knew or should have known the plain meaning Minn. Stat. § 609.3455, Subd. 8 (b) authorizes the commissioner to impose conditions of release relating to conditional release apply to all sex offenders sentenced to prison for a violation of Minn. Stat. §§ 609.342, 609.343, 609.344, 609.345, or 609.3453, which excluded Mr. Stevens' violations Minn. Stat. §§ 609.17.

251.    Based on the unlawful policy, custom, or practice created and implemented by Defendants, Mr. Stevens was not convicted of a crime defined by section 609.345–fourth degree criminal sexual conduct.

252.    Based on the unlawful policy, custom, or practice created and implemented; Defendants failed to notify  the sentencing court and the prosecutor of the terms of Mr. Stevens' conditional release excluded violation of Minn. Stat. §§ 609.17.

253.    Yet failed to notify the sentencing court, or the prosecutor, that Mr. Stevens alleged violation of Minn. Stat. § 609.17,  is not one of the enumerated violations in Minnesota statute, authorizing a conditional release sanction.

254.    The acts and omission of Defendants knew or should have known Plaintiff's confinement constitute false imprisonment for violations of Minn. Stat. § 609.17, attempted fourth degree criminal sexual conduct.

255.    The acts and omissions of Defendants, specifically set forth above continued the false imprisonment upon revocation of terms of release despite yearly progress review status reports identifying Mr. Stevens' violation for Minn. Stat. §§ 609.17, Subd. 1; from April 2007 through November 21, 2014 without violating Minn. Stat. § 609.345 listed in Minn. Stat. § 609.3455, Subd. 8.

256.    The acts and omissions of Defendants, specifically set forth above, has been declared invalid upon a favorable termination by an authorized tribunal in Minnesota's Supreme Court decision of *State v. Noggle,* 881 N.W.2d 545 (Minn. July 6, 2016); Holding: Minn. Stat. § 609.3455, Subd. 6, does not authorize a 10-year conditional-release term for Noggle's violation of attempted third-degree criminal sexual conduct.

257.    Defendants Roy, Fabian, Pederson, Reiser, Smith, Otte-Phillips, Korts, Rodriquez, Wesson and Clark in their individual capacity, failed to alter the DOC's interpretation of Minn. Stat. § 609.3455, Subd. 8., for which plain language excluded violations of attempts and yet they each did nothing to change these type of policies, customs and practices from being enforced, or to prevent this conduct from occurring and actively continued to participate in such conduct through 2014.

258.    Mr. Stevens has been subjected to and injured by false imprisonment and suffered damages as well as suffered emotionally and additional mental anguish in relation to restrained liberties from November 2006 through November 2014.

259.    Unless relief is granted, Plaintiff will continue to suffer from the losses in relation to unnecessary liberty restraint as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

## COUNT IV.
### Deprivation Of Liberty.

260.    Plaintiff incorporates all previous allegations as if fully set forth herein.

261.    The Fourteenth Amendment guarantees that "[n]o State shall...deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

262.    The Fourteenth Amendment Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.

263.    Mr. Stevens brings this deprivation of liberty claim pursuant to 42 U.S.C. § 1983.

264.    Minnesota Department of Correction is mandated law prior to setting terms of conditional release upon an offender is mandated to notifying the sentencing court and the prosecutor in the jurisdiction where Plaintiff was sentenced of the terms of his conditional release.

265.    Based on policy, custom, or practice created and implemented by Defendants, Plaintiff's sentence imposed by the district court determined the maximum length of the supervised release period, as the court does not set the terms or conditions on which the offender is released for which Defendants, not the court, revokes supervised release if the offender violates any of the conditions of supervised release.

266.    Based on the policy and procedures created and implemented by Defendants Pederson, Hearing and Release Director imposed terms of conditional release for Mr. Stevens.

267.    The acts and omissions of Defendants, specifically set forth above, failed to notifying the sentencing court and the prosecutor in the jurisdiction where Plaintiff was sentenced of the terms of his conditional release, as terms set were not reasonable related to his offense.

268.    The acts and omissions of Defendants, specifically set forth above, Mr. Stevens liberties were restrained based on Defendants imposed terms of release not reasonable related to his offense.

269.    The acts and omissions of Defendants, specifically set forth above, Mr. Stevens right to due process, (liberty), was restrained on the unlawful acts by Defendants Fabian

and Pederson for Plaintiff's terms of condition release not related to his offense of Attempted Criminal Sexual Conduct in the Fourth degree-Use of Force.

270.    The acts and omissions of Defendants Roy and Fabian, specifically set forth above, given the statutory powers and duties granted to the Commissioner of Corrections, including those related to the administration of the PRT, Defendants Reiser, Smith, Otte-Phillips, Korts, Rodriquez, Wesson and Clark in their individual capacity held PRT hearing and failed to alter the DOC's interpretation of Minn. Stat. § 609.3455, Subd. 8., which plain written language excluded violations of attempts.

271.    Yet each Defendant knew or should have known that the DOC's practice of administratively imposing terms of conditional release as applied to an attempt conviction was unlawful and did nothing to change these type of policies, customs and practices from being enforced, or to prevent this conduct from occurring and actively continued to participate in such conduct through 2014.

272.    The acts and omissions of Defendants, specifically set forth above, Mr. Stevens right to due process, (liberty), was restrained on the unlawful acts by Defendants Roy, Fabian, Pederson, Reiser, Smith, Korts, Rodriquez, Wesson, and Clark's actions, through Plaintiff's annual progress review reports identifying revocations of terms of release for violation of Minn. Stat. § 609.17 from April 2007 through November 21, 2014 without violating Minn. Stat. § 609.345 listed in Minn. Stat. § 609.3455, Subd. 6 and Subd. 8.

273.    Defendants Roy, Fabian, Pederson, Reiser, Smith, Otte-Phillips, Korts, Rodriquez, Wesson and Clark in their individual capacity, knew or should have known when holding a PRT annually, the plain meaning Minn. Stat. § 609.3455, Subd. 8 authorized the

commissioner to impose "conditions of release apply to all sex offenders sentenced to prison for a violation of Minn. Stat. §§ 609.342, 609.343, 609.344, 609.345, or 609.3453, which excluded Mr. Stevens's violations of Minn. Stat. § 609.17.

274.    Defendants Roy, Fabian, Pederson, Reiser, Smith, Otte-Phillips, Korts, Rodriquez, Wesson and Clark in their individual capacity, knew or should have known Mr. Stevens right to due process, (liberty), was restrained based on the unlawful policy, custom, or practice created and implemented by Defendants, failing to act on Plaintiff was not convicted of a crime defined by Minn. Stat. § 609.345–fourth degree criminal sexual conduct.

275.    The acts and omissions of Defendants, specifically set forth above, Mr. Stevens right to due process, (liberty), was restrained based on failed policy, procedures and practices implemented by Defendants mandating a notification to the sentencing court and the prosecutor of the terms of the Mr. Stevens' conditional release for a violation of Minn. Stat. § 609.345

276.    The acts and omissions of Defendants, specifically set forth above, Mr. Stevens right to due process, (liberty), was restrained based on sentencing policy, procedures and practices implemented by Defendant Otte-Phillips, Mr. Stevens' imposed conditions of release required defendants to notify the sentencing court and the prosecutor of the terms of conditional release for a violation of Minn. Stat. § 609.345 for which Mr. Stevens did not violate.

277.    Yet Defendants Otte-Phillips administratively corrected Plaintiff's conditional release sentence by adding one day terms, even though plaintiff's violation of Minn. Stat.

§ 609.17 is not one of the enumerated statutes in Minn. Stat. § 609.3455, Subd. 8 justifying an extra day of imprisonment.

278.    The acts and omissions of Defendants, specifically set forth above failed to notify the sentencing court or the prosecutor when plaintiff's violation of Minn. Stat. § 609.17 is not one of the enumerated statutes in Minn. Stat. § 609.3455, Subd. 8 (a), as required to impose terms of release under subd. 8 (b) that authorized Mr. Stevens terms of release or a re-imprisonment for a conditional release sanction subd. 8 (c).

279.    The acts and omissions of Defendants, specifically set forth above constitute an arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them to restrain Mr. Stevens liberties.

280.    The acts and omissions of Defendants Roy, Fabian, Pederson, Reiser, Smith, Otte-Phillips, Korts, Rodriquez, Wesson and Clark specifically set forth above knew or should have known Plaintiff's deprivation of liberty from November 3, 2006 through November 21, 2014 violated the Fourteenth Amendment to the United States Constitution.

281.    The acts and omissions of Defendants, specifically set forth above has been declared invalid upon a favorable termination by an authorized tribunal in Minnesota's Supreme Court decision of *State v. Noggle,* 881 N.W.2d 545 (Minn. July 6, 2016); Holding: Minn. Stat. § 609.3455, Subd. 6, does not authorize a 10-year conditional-release term for Noggle's violation of attempted third-degree criminal sexual conduct.

282.    The acts and omissions of Defendants constitute a deprivations of liberties without procedural protections in violation of Plaintiff's rights protected by the Fourteenth Amendment of the United States Constitution.

283.    Defendants Roy, Fabian, Pederson, Reiser, Smith, Otte-Phillips, Korts, Rodriquez,

Wesson and Clark in their individual capacity, failed to alter the DOC's interpretation of

Minn. Stat. § 609.3455 subd. 8, which plain language of the conditional release statutes

setting the terms of release excluded violations of Minn. Stat. § 609.17; and yet they each

failed to change policies and practices from being enforced; or to prevent this conduct

from occurring and actively continued to participate in such conduct through 2014.

284.    Mr. Stevens, has been subject to and injured by these alleged violations as well as

suffered emotionally and additional mental anguish in relation to restrained liberties from

November 2006 through November 2014.

285.    Unless relief is granted, Plaintiff will continue to be injured by the result of his

suffering damages in relation to and from arbitrary restraint upon his liberty as a direct

and proximate result of Defendants' acts and omissions specifically set forth above.

### Count V.
### Denial Of Right To Refuse Treatment/ Obtain Services Voluntary In Violation Of The Fourteenth Amendment To The United States Constitution And The Minnesota Constitution.

286.    Mr. Stevens incorporates all previous allegations as fully set forth herein.

287.    The Fourteenth Amendment guarantees that "[n]o State shall...deprive any person

of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

288.    Mr. Stevens brings this Fourteenth Amendment claim pursuant to 42 U.S.C. §

1983.

289.    Fourteenth Amendment due process requires that the conditions and duration of

confinement have some reasonable relation to the purpose for which persons are

committed. Civilly committed persons may be subjected to liberty restrictions reasonably related to legitimate government objectives and that are not tantamount to punishment as determined by reasonable professional judgment.

290.    Based on the policy and procedures created and implemented by Defendants, once Plaintiff was under dual commitment, his treatment and supervision was turned over to the DHS, mandating him to abide by all rules and regulations of the facility whose authority and control the offender is under.

291.    Based on the policy and procedures created and implemented by Defendants Pederson, Hearing and Release Director imposed terms of conditional release for Mr. Stevens to follow facility rules and regulations as directed by the designee or clinical director of the MSOP.

292.    The acts and omissions of Defendants Fabian and Pederson knowingly revoked Mr. Stevens' conditional release for arbitrarily choosing to not participate in treatment that lacks appropriate procedural protections afforded to sexually dangerous persons civilly committed to the DHS, including the right to refuse treatment.

293.    The acts and omissions of Defendant Ludeman, Johnston and Sonnek knowingly authorized Mr. Stevens' discharge/transfer to correctional facility after informing Plaintiff he had a right to refuse treatment while civilly committed to the DHS.

294.    The acts and omissions of Defendants, specifically set forth above, were informed prior to any violation proceeding, Mr. Stevens' had a right to refuse treatment reasonably related to the proper purpose of medical treatment under DHS authority, and aided the other named Defendants with information that resulted in punishments from November

2006 through November 2014, violating Mr. Stevens' clearly established rights to refuse treatment under the Fourteenth Amendment to the United States Constitution.

295.    The acts and omissions of Defendants Fabian, Pederson, Ludeman, Johnston and Sonnek specifically set forth above, constitute an unreasonable failure to provide Mr. Stevens with the appropriate procedural protections to refuse such care, in violation of the Fourteenth Amendment to the United States Constitution.

296.    Defendant Fabian, Pederson, Ludeman, Johnston and Sonnek in their individual capacity knew or should have known of the rules and regulations that were implemented and yet they each did nothing to change or alter policies and practices from being enforced; or to prevent this conduct from occurring; and *continued* to actively participate in such conduct.

297.    Mr. Stevens, has been subject to and injured by these alleged violations as well as suffered emotionally and additional mental anguish in relation to restrained liberties from November 2006 through November 2014.

298.    Unless relief is granted, Mr. Stevens will continue to suffer the losses in relation to unnecessary liberty restraint as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

## COUNT VI.
### Recovery of wages—State Law Claim

299.    Mr. Stevens incorporates all previous allegations as fully set forth herein.

300.    Minnesota law authorizes tortious actions for recovery of wages pursuant to Minn. Stat. § 541.07, subd.5.

301.   Based on unlawful policy, custom, or practice created and implemented by Defendants, Plaintiff was required to work (labor), and was subjected to distinct wage deductions every two weeks for cost of his incarceration not reasonably related to his offense accruing through November 2014.

302.   Based on policy and procedures created and implemented by Defendant Wieneke, DOC industry director authorized an unconstitutional policy as applied to Plaintiff for deducting wages for cost of confinement not related to any confined offense, and the actions taken directly by the director knew or should have known was not authorized.

303.   The acts and omissions of Defendants Roy, Rieser and Smith subjected Mr. Stevens to continual unlawful deductions of wages every two weeks for his cost of incarceration accruing through November 2014.

304.   Mr. Stevens has been subject to loss of wages and has been financially damaged, as well as suffered emotionally and additional mental anguish by these alleged violations

305.   Unless relief is granted, Plaintiff will continue to be injured from the loss of wages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

### Count VII.
### Deprivation of Property In Violation Of The Fourteenth Amendment To The United States Constitution

306.   Mr. Stevens incorporates all previous allegations as fully set forth herein.

307.   The Fourteenth Amendment guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

308.   Plaintiffs bring this due process claim pursuant to 42 U.S.C. § 1983.

309.   Based on policy, procedures and practices implemented by Defendants, Plaintiff was involuntarily housed at MCF-RC from November 17, 2006 through November 21, 2014 as the result of violating alleged terms of conditional release.

310.   Based on policy, procedures and practices implemented by Defendants, Mr. Stevens was subject disciplinary sanctions that are routinely placed upon any inmate who refuses to participate in vocational rehabilitative programs with employment-related goals for inmates.

311.   Based on policy, procedures and practices implemented by Defendants, Mr. Stevens was required to sign an agreement for deduction for his room and board.

312.   Based on policy, procedures and practices implemented by Defendants, any state money paid into the cost of confinement is for the sole purpose to benefit him.

313.   Based on policy and procedures created and implemented by Defendants, Mr. Stevens paid for room and board for a violation of fourth degree criminal sexual conduct that authorized deductions such for his cost of confinement.

314.   Based on policy and procedures created and implemented by Defendant Wieneke, DOC industry director authorized an unconstitutional policy as applied to Plaintiff for deducting wages for cost of confinement not related to any confined offense, and the actions taken directly by the director knew or should have known was not authorized.

315.   The acts and omissions of Defendants Fabian, Roy, Rieser and Smith, Plaintiff was subjected to wage deductions for cost of confinement for fourth degree criminal sexual conduct; for which crime Plaintiff was not duly convicted of in violation of the Fourteenth Amendment to the United States Constitution.

316.    Mr. Stevens was subject to property losses through wage deductions for cost of confinement related to crimes not committed in violation of due process rights.

317.    Unless relief is granted, Mr. Stevens will continue to be suffer from the financial losses as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

### Count IX
### Involuntary Servitude

318.    Plaintiff incorporates all previous allegations as if fully set forth herein.

319.    The Thirteenth Amendment by express provision, permits involuntary servitude as a punishment for crime whereof the party shall have been duly convicted.  U.S. Const. amend. XIII.

320.    Mr. Stevens brings this deprivation of liberty claim pursuant to 42 U.S.C. § 1983.

321.    The Commissioner of Minnesota Department of Correction may impose disciplinary sanctions upon any inmate who refuses to participate in vocational rehabilitative programs.  This includes work assignment programs with employment-related goals for inmates.

322.    Based on policy, custom, or practice created and implemented by Defendants, Plaintiff was required to work of face disciplinary restrictions.

323.    Based on the policy and procedures created and implemented by Defendants Fabian, Roy,  Rieser,  Smith and Wieneke, Mr. Stevens was assigned to work for Minncor Industries located within Minnesota Correctional Facility-Rush City .

324.    The acts and omissions of Defendants, specifically set forth above, required Mr. Stevens to perform work for fourth degree criminal sexual conduct while confined, crimes he was not duly convicted of.

325.    The acts and omissions of Defendants, specifically set forth above, required involuntary servitude from Mr. Stevens as a punishment for crimes not reasonable related to his confinement.

326.    The acts and omissions of Defendants, specifically set forth above, required involuntary servitude from November 17, 2006 through November 14, 2014 as punishment for crimes not reasonable related to his conviction.

327.    The acts and omissions of Defendants Roy and Fabian, specifically set forth above, given the statutory powers and duties granted to the Commissioner of Corrections, including those related to the administration of the PRT, Defendants Reiser, Smith, Korts, Rodriquez, Wesson and Clark in their individual capacity held PRT hearing failed to act to prevent involuntary servitude for crimes Mr. Stevens was not duly convicted of as the DOC's interpretation of Minn. Stat. § 609.3455, Subd. 8., which plain written language excluded violations of attempts, prohibiting punishment .

328.    Yet each Defendant knew or should have known that the DOC's practice of administratively sanctions on conditional release violators as applied to an attempt conviction was unlawful and did nothing to change these type of policies, customs and practices from being enforced, or to prevent involuntary servitude from occurring and actively continued to participate in such conduct through 2014.

329.   Mr. Stevens, has been subject to involuntary servitude and injured by these alleged violations as well as suffered emotionally and additional mental anguish in relation to punishment imposed from November 17, 2006 through November 14, 2014.

330.   Unless relief is granted, Plaintiff will continue to be injured by the result of his suffering damages in relation to and from arbitrary punishment as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

### Count X.
### Failure To Train.

331.   Mr. Stevens incorporates all previous allegations as fully set forth herein.

332.   A supervisor may be held individually liable under § 1983 if he directly participates in the constitutional violation, or if he fails to train or supervise the subordinate who caused the constitutional violation.

333.   Mr. Stevens brings a failure to train and supervise subordinates who caused deprivation of liberty claim under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

334.   Failure to supervise claim may be maintained only if a defendant demonstrated deliberate indifference or tacit authorization of the offensive acts

**Defendant Roy And Fabian Failed To Train, Supervise Upon Statutory Legal Criteria.**

335.   Mr. Stevens incorporates all previous allegations as fully set forth herein.

336.   Mr. Stevens brings a Failure to train and supervise claim pursuant to 42 U.S.C. § 1983.

337.   Based upon policy and procedures created and implemented by Defendants, all department commissioners have the power to prescribe procedures for the internal management of the department or agency to the extent that the procedures do not directly affect the rights of, or procedure available to the public under Minn. Stat. § 15.06, Subd. 6(4).

338.   Based upon policy and procedures created and implemented,  Defendants Roy, and Fabian, each is liable for the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees delegated to them the commissioner's powers, duties and responsibilities, subject to the commissioner's control and the conditions the commissioner prescribes under Minn. Stat. § 241.01, Subd. 3a.

339.   Based upon policy and procedures created and implemented,  Defendants Roy, and Fabian, are each is liable for the maintenance of adequate standards of operation in discharging the functions of the department, obtaining suitable candidates for positions for which there is a scarcity of qualified applicants, and the development of more effective treatment programs directed toward the correction and rehabilitation of persons found delinquent or guilty of crimes, and of more effective delinquency prevention the commissioner of corrections shall establish a training program including but not limited to in-service, preservice, internship and scholarship programs, and an operational research program, under Minn. Stat. § 241.01, Subd. 5.

340.   Based upon policy and procedures created and implemented by Defendants Roy, and Fabian, failed to train and supervise offending  named Defendants upon interpreting

statutory construction to ensure due process protections under the Fourteenth Amendment.

341.    Defendants Roy and Fabian in their individual capacity, were each aware of the policies and practices of the duties assigned to Defendants Pederson, Reiser, Smith, Otte-Phillips, Korts, Rodriquez, Wesson and Clark that the need for more or different training is so obvious and widespread, the inadequacy so likely to result in the violation of constitutional rights, that the training can reasonably be said to have been deliberately indifferent to Mr. Stevens' rights.

342.    The acts and omissions of Defendant Roy, Fabian, Pederson, Reiser, Smith, Otte-Phillips, Korts, Rodriquez, Wesson and Clark, specifically set forth above, deprived Mr. Stevens of liberties without due process protection from November 3, 2006 through November 21, 2014 under the Fourteenth Amendment to the United States Constitution due to a lack of training and supervision.

343.    Defendant's lack of training and supervision set forth above, resulted in unlawful restraint upon liberties and has been declared invalid by Minnesota's Supreme Court authorized to make such determination by favorable termination by *State v. Noggle,* 881 N.W. 2d 545 (Minn. July 6, 2016).

344.    Yet Defendant Roy, Fabian, Pederson, Reiser, Smith, Otte-Phillips, Korts, Rodriquez, Wesson and Clark in their individual capacity, failed to take action to change the unlawful policy, custom, or practice, and continued to deprive liberties through November 2014, and, in fact, endorsed the use of such practices by other Defendant.

345.    The acts and omissions of Defendant Roy, Fabian, as a direct participant in interpretation of conditional release terms and criteria that caused violation of Mr. Stevens' rights and through his failure to train or supervise other defendants practices of statutory interpretation of terms and conditions as applied to specific offenders caused the violation of unauthorized imprisonment/restraint alleged in Plaintiff's complaint.

**Defendant Ludeman, Jesson and Johnston Failed To Train, Supervise employees Upon Statutory Transfer and Discharge Criteria.**

346.    Mr. Stevens incorporates all previous allegations as fully set forth herein.

347.    Mr. Stevens brings a Failure to train and supervise claim pursuant to 42 U.S.C. § 1983.

348.    Based upon policy and procedures created and implemented,  Defendants Ludeman and Jesson are each liable for maintaining the Minnesota Sex Offender Program, providing specialized sex offender assessment, diagnosis, care, treatment, supervision, and other services to civilly committed sex offenders as defined in section 246B.01, subdivision 1a.  Services may include specialized programs at secure treatment facilities as defined in section 253 B.02, subdivision 18a, consultative services, aftercare services, community-based services and programs, transition services, or other services consistent with the mission of the Department of Human Services.

349.    Based upon policy and procedures created and implemented, Defendants Ludeman and Jesson are each liable for the existence of a continued, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees who are

authorized to promulgate rules to govern the operation of secure treatment facilities operated by Minnesota Sex Offender Program. Minn. Stat. 246B.04, subd. 1 (2008).

350.   Based upon policy and procedures created and implemented by Defendants Ludeman and Jesson, failed to train and supervise other named Defendants Johnston and Sonnek upon right to refuse treatment without punishment to ensure due process protections under the Fourteenth Amendment.

351.   Defendants Ludeman and Jesson in their individual capacity, were each aware of the policies and practices of risk assessors, Defendants Barbo, Herbert and Jones were not trained upon the discharge procedure and unconstitutionally applied the discharge procedure to Mr. Stevens while in the Department of Correction creating unnecessary imprisonment and that the need for more or different training is so obvious and widespread, the inadequacy so likely to result in the violation of constitutional rights, that the training can reasonably be said to have violated to Mr. Stevens' rights.

352.   The acts and omissions of Defendant Barbo, Herbert and Jones, specifically set forth above, arbitrarily assessed Mr. Stevens risks, depriving Mr. Stevens of liberties without due process protection from May 2012 through November 21, 2014 under the Fourteenth Amendment to the United States Constitution due to a lack of training and supervision.

353.   Defendant's lack of training and supervision set forth above, resulted in unlawful restraint upon liberties.

354.   Yet Defendant Ludeman and Jesson in their individual capacity, failed to take action to change the unlawful policy, custom, or practice, that resulted in deprivation of

Plaintiff's liberties through November 2014, and, in fact, endorsed the use of such practices by other Defendant.

355.    Mr. Stevens has been subject to and injured by the lack of training and supervision as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.

356.    Unless relief is granted, Mr. Stevens will continue to suffer from the losses as a direct and proximate result of all Defendants' acts and omissions specifically noted above.

## RELIEF

1.    **Declaratory Relief**.  Pursuant to 28 U.S.C.§ 2201, a controversy existed in State Post-Conviction Remedies to review records of Mr. Stevens imposed conditional release sanctions as the sentence is expired or is not appropriate.

Plaintiff requests a declaration upon his violation for attempted criminal sexual conduct excluded setting terms of release and sanctions by the Commissioner of Corrections, as applied to the conditional release statute as defined in *State v. Noggle,* 881 N.W. 2d 545 (Minn. July 6, 2016).

Further Plaintiff requests a declaration upon his continued commitment as a Sexually Dangerous Person based in part upon attempted fourth degree criminal sexual under Minn. Stat. § 609.17, which is not one of the 18 enumerated offenses defined in the SDP Act under Minn. Stat. 253B.02, subd. 7a(b) (listing 18 criminal offenses that may give rise to the statutory presumption of harmful sexual conduct), nor does any plain

language appear in subdivision 7a(b) that includes an attempt to find dangerousness to the public;

Based upon aforementioned, the court has been apprised Plaintiff history includes a violation of Minn. Stat.§ § 609.17, Subd. 1, 4(2), § 609.345, Subd. 1 (c), Attempted Fourth- Degree Criminal Sexual Conduct and a violation for attempted fourth-degree criminal sexual conduct is not a "violation of Minn. Stat. 609.345, or  Minn. Stat. 253B.02, subd. 7a(b), as required by the plain language of laws.  Thus the plain language of the statutes did not lawfully authorize the Defendants to continue to confine Plaintiff upon his Attempted Fourth Degree Criminal Sexual Conduct.

Based upon policy and procedures created, the court has further been apprised that Plaintiff was found to be in violation of conditional release terms set by the Commissioner of Corrections under Minn. Stat. § 609.3455 Subd. 8.(a),(b) and (c). Plaintiff having allegedly violated Minn. Stat. § § 609.17, Subd. 1,  is not a "violation of Minn. Stat. § 609.3455 Subd. 8 (a), (b) and (c)."  Thus the imposed sanctions are not lawfully authorized.

Pursuant to 28 U.S.C.§ 2202 Mr. Stevens request a permanent injunction for expungement of records in relation to a November 2006 conditional release violation sanction as noted above.

Based upon policy and procedures created by Minnesota Statute, the state, during future civil and criminal proceeding, will rely on recorded release sanctions for restraining future liberties in relation to sex offender risks to the public.

Unless relief is granted, Mr. Stevens will suffer future harm from the sanction as a direct and proximate result of all Defendants' acts and omissions specifically noted above.

2.    **Equitable Remedy For Property Losses.**    Mr. Stevens requests an equitable remedy for property losses pursuant to 42 U.S.C. § 1983, which authorizes a *suit in equity*, or other proper proceeding for redress, against any person who, under color of state law, subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution.

Defendants unconstitutionally subjected Mr. Stevens to wage deductions at MCF-RC for cost of confinement through wage deduction pursuant to Minn. Stat. §§ 243.23-24, not related to his offense of attempted fourth degree criminal sexual conduct and instructed payment into facility account.

Mr. Stevens requests an equitable remedy. Defendants Roy, Rieser and Wieneke in their individual capacity do not have immunity from Mr. Stevens' 1983 claims for equitable remedy of this nature, as the money does not come out of the state's general fund and request money previously paid by Mr. Stevens be returned.

Mr. Stevens' financial losses paid into cost of confinement exceeds $50,000 and may be determined by the records held by Defendants Roy, Wieneke and Rieser.

3.    **Compensatory Damages:** 42 U.S.C. § 1983 authorizes compensatory damages once liability is found.

Plaintiff sues for compensatory damages as provided by law, determined on a per diem basis for 2940 days for the unlawful imprisonment from November 3, 2006 through November 21, 2014 for Counts I and II.

Plaintiff sues for compensatory damages as provided by law for deprivation of property; Count VI (if equitable remedy is not appropriate).

Plaintiff sues for compensatory damages as provided by law for each remaining counts III, IV, V, VI, VII, VIII, IX and X.

4.  **Punitive Damages.**  Mr. Stevens sues for punitive damages pursuant to 42 U.S.C. § 1983 as determined by jury.

## PRAYER FOR RELIEF

A. Plaintiff prays the court finds the unlawful conduct alleged herein be found illegal and in violation of the federal constitutional, statutory and common law claims alleged herein;

B. That Plaintiff recover compensatory and punitive damages, as provided by law, determined to have been sustained as to each of them, and that judgment be entered against Defendants on behalf of Plaintiff;

C. Such any other relief and remedies as the court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: September 30, 2017

Brad Stevens.
1111 Highway 73
Moose Lake, Minnesota.  55767